[Civ. No. 25076.    Second Dist., Div. Two.    Jan. 30, 1961.]

INDUSTRIAL INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and JOSEPH H. ESTILL, Respondents.

Clopton & Penny for Petitioner.

Everett A. Corten and Edward A. Sarkisian for Respondents.

NOURSE, J. pro tem.*—By its petition herein Industrial Indemnity Company seeks to annul an award made by the respondent commission after reconsideration by which petitioner is ordered to pay to applicant the amounts expended by him for self-procured medical treatment.

---

*Assigned by Chairman of Judicial Council.

The facts here are not in dispute. They are: In October 1956 and February 1957 the applicant, Joseph H. Estill, sustained injuries to his back. Petitioner was the compensation insurance carrier of Estill's employer. It voluntarily paid temporary disability indemnity after the October injury and furnished medical treatment including hospitalization through April 1957.

Estill filed application with the respondent commission for workmen's compensation indemnities and medical and hospital benefits. After hearing had upon this application the commission found that the injuries sustained in October 1956 and February 1957 were sustained in the scope and course of Estill's employment; that said injuries did not cause any permanent disability and that said employee was not in need of further "medical treatment to cure or relieve from the effects of said injuries."

During the course of the proceedings there was a great divergence of medical opinion as to the extent of the applicant's disability and its relationship to the injuries. None of the doctors whose reports were received by the commission diagnosed a disc injury and all of them stated that all of the tests made to detect such an injury had been negative. After the commission had denied applicant's claim for further medical treatment to cure and relieve the effects of his injuries, applicant sought treatment and care from several physicians of his own choice. He finally consulted with Dr. Jacobs who diagnosed applicant's condition as a herniated disc, hospitalized applicant and with assistance of Dr. Daitch operated upon him and found a large protruded disc. Thereafter he performed a second operation for a post-surgical infection and continued to treat applicant to a point where applicant had achieved a remarkable improvement.

The commission's award denying applicant further medical treatment was entered on January 8, 1959.

After the entry of the aforesaid decision and award by the commission, applicant did not again contact petitioner nor did he advise it of the diagnosis made by Dr. Jacobs or of the proposed surgery or of the continued treatment by Dr. Jacobs after surgery and it was not until he filed his petition to reopen on August 17, 1959, that petitioner or the respondent commission were advised of said diagnosis, operation and treatment.

In March 1960 the referee of the commission issued his order granting the petition to reopen and made his order

amending the findings and award whereby he found among other things that petitioner was entitled to be reimbursed for the costs of his self-procured medical treatment. The commission granted petitioner's petition for reconsideration and, thereafter, on September 28, 1960, entered its decision and awarded applicant reimbursement for his self-procured medical treatment, procured by him subsequent to January 8, 1959.

It is petitioner's contention that the commission exceeded its powers in this matter for the reason that the evidence conclusively shows, so it alleges, that it was not given notice of Dr. Jacobs' diagnosis of a herniated disc and opportunity to provide treatment and surgical care therefor. Petitioner's contention cannot be sustained.

It was petitioner's duty to furnish medical, surgical and hospital treatment to cure and relieve the applicant and it was entitled to the opportunity so to do and it cannot be held liable for the failure to furnish such treatment and care in the absence of a showing that it had been notified of the need for such treatment and care. (*Simien* v. *Industrial Acc. Com.*, 138 Cal.App.2d 397, 399 [291 P.2d 951] ; *Leadbettor* v. *Industrial Acc. Com.*, 179 Cal. 468 [177 P. 449] ; *Columbia etc. Steel Div. U. S. Steel Co.* v. *Industrial Acc. Com.*, 115 Cal.App.2d 862 [253 P.2d 45] ; *Bethlehem Steel Corp.* v. *Industrial Acc. Com.*, 70 Cal.App.2d 382 [161 P.2d 59] ; Lab. Code, § 4600.)

On the other hand, if the employer has had the opportunity to furnish treatment and care but neglects so to do, the employee is entitled to himself procure that care and the employer or its compensation insurance carrier is liable for the reasonable expense incurred by him in so doing. (Lab. Code, § 4600.)     The treatment which the statute requires the employer to furnish is such as would "reasonably and seasonably tend to relieve and cure the injured employee from the effects of the injury. . . ." (*Union Iron Works* v. *Industrial Acc. Com.*, 190 Cal. 33, 40 [210 P. 410] ; *County of Los Angeles* v. *Industrial Acc. Com.*, 13 Cal.App.2d 69 at 74 [56 P.2d 577].)

It is evident under the facts here that petitioner had not only failed to furnish applicant with medical and surgical treatment which would meet the test which we have just set forth, but that it had refused applicant further medical care. The applicant had been under the observation of and treated by physicians employed by petitioner intermittently from

October 1956 to the date of the original hearing before the commission in 1958. None of the physicians employed by petitioner had made a proper diagnosis of applicant's condition and none of them had given him any treatment which alleviated or relieved applicant from the symptoms and disability which he continually suffered. Petitioner successfully resisted applicant's petition for an order from the commission for further medical treatment and this in itself was, under circumstances existing here, tantamount to a refusal of such treatment. Applicant was therefore given two choices; he could either continue to suffer or he could seek relief through physicians of his own choice. He was fully justified in attempting the second course of action and as a result of doing so, his true condition was discovered; he was operated on and to a large extent cured.

Petitioner, argues, however, that even though applicant was free to seek independent medical advice to diagnose his condition, it was entitled to be advised of any new diagnosis and thus given the opportunity to reevaluate the case and if it saw fit so to do, to furnish further medical care. We see no merit in this contention. It was a question of fact to be decided by the commission whether it would have been futile for applicant to make a further request of petitioner for further medical care. The referee expressly found that it would have been futile and that finding is implicit in the findings of the commission and its award.

There is substantial evidence to uphold these findings. The diagnosis made by Dr. Jacobs was based solely upon subjective and objective symptoms, all of which were known to the physicians upon whose opinion petitioner had relied in refusing further medical care. Further, Dr. Jacobs rejected the negative results of the numerous neurological, pathological and X-ray tests and examinations upon which petitioner's physicians as well as the medical experts appointed by the commission relied in reaching the conclusion that applicant was not suffering from a herniated disc but that his condition was the result of a neurosis. Certainly, in view of the further fact that the commission had made findings in accordance with the opinions expressed by petitioner's experts as well as its own, it cannot be said that the commission's final conclusion that it would have been futile for applicant, after receiving the new diagnoses, to request further aid from petitioner, was an unreasonable conclusion from the facts.

█ ˙ The law does not require idle acts and applicant's right to reimbursement for the medical expense incurred by him after January 8, 1959, was not defeated by his failing to make a futile request of petitioner. (*California Union Ins.* v. *Industrial Acc. Comm.,* 183 Cal.App.2d 644 [7 Cal.Rptr. 67].)

At oral argument, counsel for petitioner suggested that if we were to. hold that applicant was excused from advising petitioner of the diagnoses made by Dr. Jacobs, that would be tantamount to holding that an applicant would, in every case, be excused from requesting further medical care in the event· that there had been a finding of the commission ·that he was not then in need of further medical care. We find no substance in this contention. █ Whether a request for further medical care would be futile is in every case a question of fact and a prior finding of the commission that an applicant was not in need of further medical care is but one fact to be considered by it in determining whether a further request would be futile.

█ Petitioner further contends that after the discovery of the herniated disc it was applicant's duty to notify it of the facts of the discovery of the disc and the operation in order that petitioner might take over his further medical care. We see no merit in this contention. Certainly, petitioner was not obligated "to change horses in the middle of the stream," and take himself out from under the care of the physician who had so successfully diagnosed his condition and alleviated it.

The award is affirmed.

Fox, P. J., and Ashburn, J., concurred.