[Civ. No. 33820. Second Dist., Div. One. May 28, 1969.]

JOE BROTHERTON, Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD; HIGHLAND SPRINGS RESORT et al., Respondents.

Gross, Durante & Narvid and Lawrence Gross for Petitioner.

Everett A. Corten, Sheldon M. Ziff and Arthur C. Jones for Respondents.

FEINERMAN, J. pro tem.*—Petitioner-applicant seeks annulment of a decision after reconsideration by the Workmen's Compensation Appeals Board which denied his claim for reimbursement for the expenses of self-procured medical, hospital, and surgical care.

It is our conclusion that upon the facts established by the record the petitioner is entitled to reimbursement under the principles of law enunciated by the Supreme Court in *McCoy* v. *Industrial Acc. Com.*, 64 Cal.2d 82 [48 Cal.Rptr. 858, 410 P.2d 362].

## FACTS

Petitioner sustained a back injury arising out of and occurring in the course of his employment as a gardener on August 8, 1962. On July 29, 1963, an award issued for permanent

---

*Assigned by the Chairman of the Judicial Council.

disability indemnity based on a rating of 6¾ percent. On December 2, 1964, a petition to reopen, filed November 29, 1963, was granted and a supplemental award issued for reimbursement of expenses for self-procured medical treatment, the amount to be adjusted by the parties with the board reserving jurisdiction to determine it in the event the parties were unable to adjust the matter, and for additional permanent disability indemnity based on a finding that permanent disability had increased to 13½ percent.

On August 19, 1965, a second petition to reopen, filed on May 18, 1965, was granted and a further award issued for reimbursement for self-procured medical expenses. This award covered the expenses of a spinal fusion which petitioner underwent on January 29, 1965, and provided for temporary disability indemnity from December 10, 1964, through July 13, 1965, and continuing thereafter, together with medical-legal costs. Jurisdiction on the issues of permanent disability and apportionment was reserved.

On October 14, 1965, defendants filed a petition to terminate liability on the basis of Dr. Adams' report that it was his opinion, upon his examination of petitioner on September 23, 1965, that petitioner's condition was permanent and stationary. On February 18, 1966, the petition was granted and supplemental findings and award issued for additional permanent disability, based on a finding that permanent disability had increased to 17 percent, and for future medical treatment consisting of a back support. On July 21, 1966, an order issued directing that the award for permanent disability be commuted to a lump sum and paid forthwith.

On August 4, 1967, petitioner's counsel wrote to the insurance carrier advising that his client's condition had grown substantially worse and stressing the fact that he was in urgent need of medical care. The letter further stated: "We call upon you at this time to provide the applicant with effective medical care and treatment to relieve the disabling residuals of this injury. If such treatment is not afforded applicant within fifteen days from the date of this letter, we shall have no alternative but to instruct the applicant to self-procure the necessary treatment required to relieve him."

On August 7, 1967, petitioner filed a new petition to reopen in which he alleged the recurrence of disability and increased disability in his back, leg and hips with a possible herniated lower lumbar intervertebral disc. He sought further disability indemnity and medical care together with reimbursement for

the reasonable value of any self-procured medical treatment necessarily incurred therefor.

Petitioner filed the medical reports of Dr. Stewart dated August 15, 1967, and of Dr. Andrews dated August 24, 1967. Dr. Stewart diagnosed his condition as persistent, recurrent, chronic lumbo-sacral disc ruptures and recommended that he have an electromyogram of both extremities and the low back, be re-evaluated, and have repeat exploratory decompression and fusion if indicated. Dr. Andrews reported his findings from an electromyogram performed on August 24, 1967 as a "severe denervation involving the paraspinal muscles at approximately L4, 5, S1, 2, 3 bilaterally."

At the hearing held on September 13, 1967, these reports were received in evidence and the matter was referred to an independent medical examiner in orthopedics. Under date of October 18, 1967, Dr. Gilfillan, the independent medical examiner, reported that he found no nerve root compression, that petitioner's back had an excellent fusion, that his complaints should be rated as minimal, that no further treatment was necessary, that he was not in need of any back support, and that there was no reason the petitioner could not return to work. Dr. Adams, in a report of October 18, 1967, after re-examination of petitioner on October 16, 1967, found there had been no change in his condition since an examination held on September 23, 1965, at which time Dr. Adams had reported that petitioner's condition was permanent and stationary.

At a further hearing on December 20, 1967, Dr. Gilfillan testified that he was not aware of the electromyogram performed by Dr. Andrews on August 24, 1967 and recommended that another be performed. The referee directed petitioner to report to Dr. Golseth, another independent medical examiner, for such purpose. On January 25, 1968, Dr. Golseth reported, after electromyographic examination of petitioner on January 19, 1968, that his examination revealed denervation activity in the paraspinal muscles. Furthermore, he expressed the opinion that following a laminectomy or fusion this is a rather constant electromyographic finding consistent with weakness in those muscles. Dr. Golseth found no activity in the lower extremity muscles which would indicate either old or recent involvement of the anterior divisions of the second lumbar through the second sacral roots bilaterally. He saw no appreciable difference between his findings and those noted by Dr. Andrews on August 24, 1967. Dr. Gilfillan's supplemental report under date of February 7, 1968, reiterated his original opinion that petitioner had a stable and strong fusion. On

February 28, 1968, petitioner's counsel filed a request for hearing to cross-examine Dr. Gilfillan on this report and to present rebuttal evidence.

On February 29, 1968, Dr. Stewart recommended to petitioner that he proceed to have further surgery. On March 8, 1968, the doctor advised petitioner's counsel that his client had consented to surgery and that surgery was scheduled. Prusuant thereto, on March 9 the petitioner was hospitalized. Another electromyogram was performed by Dr. Andrews on March 10, 1968. It showed deterioration of petitioner's condition and severe denervation in the L-5 and S-1, 2 and 3 distribution areas. On March 13, 1968, Dr. Stewart performed a lumbar-laminectomy at two levels and a spinal fusion. The operation revealed two very obvious disc protrusions and a total lack of fusion. It was the doctor's opinion that it was urgent that petitioner be operated on because he was taking narcotics, was in pain and unable to work, and that the 1962 injury caused the need for the surgery.

On the basis of the foregoing evidence the referee, on June 27, 1968, granted the petition to reopen and issued findings and award for further temporary disability indemnity for the period from March 9, 1968, to May 29, 1968, and thereafter for reimbursement for petitioner's self-procured medical, hospital, and surgical treatment. The appeals board granted the defendants' petition for reconsideration, set aside the award, and issued new findings and award. It found that the industrial injury caused temporary disability from March 9, 1968, to May 29, 1968 and thereafter, but because the disability was incurred more than five years from the date of injury, there was, under the provisions of Labor Code section 4656, no liability on the part of the defendants for temporary disability indemnity for that period. It found that disability was not yet permanent and stationary and reserved the issues of permanent disability and apportionment. It found that "applicant failed to give notice of need for medical treatment prior to obtaining it from doctors of his own selection." It awarded only medical-legal costs.

The opinion of the board in pertinent part states: "The record reveals that Dr. Stewart operated on applicant on March 13, 1968 without advising the defendants or the Appeals Board of such surgery, until March 21, 1968, after it had been accomplished.

"Based on our review of the record, we are of the opinion that applicant never advised defendants of the anticipated

surgery nor secured permission from defendants to perform such surgery. Furthermore, the matter was still before the Board and awaiting further hearing upon applicant's request to cross-examine Dr. Gilfillan. Furthermore, the record is not clear as to why applicant should obtain a back brace when surgery was being contemplated. Under these circumstances it cannot be said that applicant reasonably, actually and necessarily incurred self-procured medical expense.

"Under the circumstances we are of the opinion that applicant has failed to meet the requirements for approval of reimbursement of self-procured medical expenses· as alleged and listed herein. Accordingly, the expenses of said self-procured medical treatment are disallowed. (See *Cuevas* v. *Industrial Acc. Com.*, 30 Cal. Comp. Cases 125.)"

In a petition for reconsideration petitioner pointed out that notice of his need for further medical treatment and a demand therefor had been made by his counsel's letter of August 4, 1967, and that the petition to reopen filed on August 7, 1967, and the medical reports filed in the proceeding to reopen gave further notice to defendants. The board denied further reconsideration, stating that the basis for its decision was fully set forth in its decision after reconsideration.

As we read the opinion of the appeals board, it denied reimbursement for the reasonable cost of the self-procured treatment, not because there was any question that such treatment was reasonably required to cure or relieve from the effects of the industrial injury, or any question that petitioner had advised defendants of his new and further disability and need for treatment, but because petitioner did not inform defendants specifically of the anticipated surgery nor seek their permission and did not wait until his claim had been fully litigated and decided. The law does not impose such requirements as conditions precedent to the right to reimbursement.

In *McCoy* v. *Industrial Acc. Com.*, 64 Cal.2d 82 [48 Cal. Rptr. 858, 410 P.2d 362], the defendants had provided the applicant with some medical treatment following an industrial injury. They subsequently informed her, on the advice of a physician, that they would furnish no further treatment as it was unnecessary. After hearing on her claim, the commission found that further treatment was not required. Some time later applicant wrote the insurance carrier advising that her condition had become worse and she was in need of further treatment. Two doctors who had previously examined her

on behalf of the insurer re-examined her and found her condition remained permanent and stationary. Relying on their opinions, the carrier again refused further treatment. She requested a hearing by the commission. Both parties sought additional time for further medical investigation. In the meantime, applicant's self-procured physician diagnosed a ruptured disc and recommended hospitalization for further tests. While she was undergoing the tests under his supervision, defendants wrote advising her that they had arranged for her to be examined by another doctor in 10 days. Her doctor proceeded to perform surgery during which he found and removed a ruptured disc. The commission issued an award for further disability but denied reimbursement for the self-procured medical, surgical and hospital expense on the ground that defendants were not given reasonable notice, nor a reasonable opportunity to furnish surgery. Affirming the award in other respects, the court remanded the cause to the commission with instructions to award reimbursement for the reasonable cost of the self-procured medical care and temporary disability.

The opinion of the court in the *McCoy* case thoroughly considers and rejects the proposition that in order to obtain reimbursement an employee, after the employer's neglect or refusal, must afford the employer an additional opportunity to render treatment on the basis of the subsequent recommendations made by the employee's own doctor or show that an emergency excused him or that it would have been futile to make an additional request.

As in *McCoy*, the factual circumstances in the present case are not in dispute. Furthermore, they are in every material aspect on all fours with those in *McCoy*. In *McCoy* the defendants expressly refused further medical treatment; in the present case the defendants simply did not furnish any treatment. In *McCoy* the applicant underwent surgery for her back condition some five months after she requested that defendants provide further treatment; in the present case the applicant underwent surgery for his back condition some eight months after his request for treatment. There are no material differences in the operative facts calling for any distinction in the application of the law.

We hold that the rule of the *McCoy* case controls. It is stated as follows (p. 89) : "If an employer has refused an injured employee treatment for an industrial injury or claims that further care is unnecessary or futile, it is liable for the

reasonable cost of medical care secured by the employee from a physician of his own choosing if such treatment is given within a reasonable time after the employer's refusal, if there has been no substantial change in the employee's condition before independent medical advice is rendered and if, at the time reimbursement is sought, the employee can show that the treatment he received was 'reasonably required to cure or relieve from the effects of the injury.' "

In *McCoy* the court noted (p. 89) that in applying this rule it may be difficult to determine factually in a particular case whether the employee was justified in seeking independent advice on the basis of the employer's failure to provide treatment *reasonably necessary* to cure or relieve but that where, as there, the employer had refused further treatment, it was clear that he had voluntarily terminated his right to control the course of treatment. We think that this is also the case where, as here, defendants offered no treatment. As the *McCoy* opinion also notes, the right of an injured employee to reimbursement for self-procured medical help is not subject to nullification because the employer or insurance carrier in good faith relies upon the advice of a medical expert and the medical diagnosis and advice received by the employer or insurer proves to be erroneous. (See also *Zeeb* v. *Workmen's Comp. App. Bd.*, 67 Cal.2d 496, 501 [62 Cal.Rptr. 753, 432 P.2d 361].)

 The record before us does not support a conclusion that there was an *unreasonable* delay or a *substantial* change in the petitioner's condition between the time that he was last examined by the doctors on behalf of defendants and the date of surgery. The need for further surgery to relieve back pain was the issue at all times from the date of the petitioner's request for treatment. He diligently sought help. In these respects the facts of the present case cannot be distinguished from those in *McCoy*.

The premise that the petitioner should have delayed treatment or surgery pending litigation of his claim is unreasonable. As the court in *Zeeb* v. *Workmen's Comp. App. Bd.*, *supra*, 67 Cal.2d 496, 501, stated: "The employer's refusal to provide adequate and necessary medical care, whether or not in good faith, may impose a great hardship upon an employee, who due to the injury frequently is without funds to properly support himself and his family or is without funds to obtain the necessary care. It would be inequitable to require the employee before obtaining medical

care to first obtain an order from the board that he is entitled to treatment.''

The issue of lien priorities raised by applicant's counsel is premature.

In line with the order of the court in the *McCoy* case, we affirm the award of the appeals board as to the allowances made to petitioner and remand the cause to the board with these instructions: to determine and allow the *reasonable* cost of applicant's self-procured medical, hospital and surgical treatment; to determine the rights of lien claimants, including counsel for applicant, to payment therefrom; and to issue findings and award accordingly.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied June 17, 1969.