741 P.2d 313

**TERRY GRANTHAM COMPANY, Petitioner Employer,**

**Fremont Indemnity Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Bill M. Boy, Respondent Employee.**

**No. 1 CA–IC 3507.**

Court of Appeals of Arizona, Division 1, Department B.

June 16, 1987.

Jones, Skelton & Hochuli by Larry J. Cohen, Calvin Harris, Phoenix, for petitioner employer and carrier.

Langerman, Begam, Lewis and Marks by Wendi A. Sorensen, Samuel Langerman, Frank Lewis, Phoenix, for respondent employee.

## OPINION

KLEINSCHMIDT, Judge.

This is a special action review of an Industrial Commission award granting "medical, surgical and hospital benefits" pursuant to A.R.S. § 23–1062(A). We must determine two issues: (1) whether an employee forfeited his right to have modifications made to his residence when he did not give the carrier prior notice of his intent to move to the residence; and (2) whether a van falls within the category of "other apparatus" for which the carrier must pay under § 23–1062(A). Because we find that the administrative law judge applied the law correctly and because there is a reasonable basis in the record to support the award, we affirm.

An industrial injury rendered the respondent employee, Bill Boy, a quadriplegic. Thereafter, an Industrial Commission Award determined him to be permanently and totally disabled. Upon his release from the hospital, Boy notified the petitioner carrier, Fremont Indemnity (Fremont), of his intent to move into a rental residence on 77th Avenue in Phoenix. After receiving Boy's notice, Fremont provided plywood ramps, a wheelchair, a waterbed, and various apparatus for Boy's use in the residence. Fremont also provided Boy with a specially equipped van. While Fremont paid for the modifications to the van, it deducted fifty dollars per month from Boy's compensation checks for repayment of the van's purchase price.

In order to meet his rent payment, Boy originally shared his residence with two roommates. Eventually, however, Boy was faced with the prospect of making the payment by himself because one of his roommates was planning to marry and the other roommate was out of work. At this time,

the opportunity arose for Boy to purchase a residence on West Virginia Avenue in the neighborhood in which he grew up. With the financial assistance of his parents, Boy purchased the Virginia residence and moved into it. Boy then notified Fremont of his move and of his need for structural modifications to his new residence.

After Boy moved into the Virginia residence, the Industrial Commission issued an award finding that his condition was stationary and that he was afflicted with a permanent total disability. Following the Commission's award, Fremont issued a Notice of Supportive Medical Maintenance Benefits in which it agreed to pay a portion of the medical benefits Boy requested. Thereafter, Boy filed a request for investigation seeking specific additional benefits from Fremont. Ultimately, the Commission scheduled formal hearings which resulted in the issuance of a Decision Upon Hearing and Findings and Awards for Supportive Benefits containing eleven separate awards. These awards granted Boy additional benefits. Fremont requests that we review only the award requiring it to pay for modifications to Boy's residence and the award requiring it to pay for Boy's van and its modifications.

## MODIFICATIONS TO THE RESPONDENT'S RESIDENCE

■ Fremont argues that by his failure to give notice of his intent to move to the Virginia residence, Boy forfeited his right to have modifications made to the residence. Section 23–1062(A) of the Arizona Revised Statutes states that "upon notice to the employer" injured employees shall receive medical, surgical, and hospital benefits. This statute requires that the employee give the employer notice prior to unilaterally incurring compensable expenses. *Pickett v. Industrial Commission*, 26 Ariz.App. 213, 547 P.2d 484 (1976). In *Pickett*, the injured employee failed to give the employer notice before installing a swimming pool in her yard for therapeutic purposes. Consequently, we held that the employee forfeited her right to have the

employer pay for the cost of the pool. In *Pickett*, however, we did recognize that there are special circumstances in which a compensable medical expense can be incurred unilaterally by the employee "*e.g.* an emergency where the employee is unable to notify the employer." *Id.* at 214, 547 P.2d at 485.

It is undisputed that Boy failed to give Fremont, his employer's carrier, prior notice of his intent to move into the Virginia residence. Consequently, we must determine whether special circumstances are present in this case which would allow Boy to move without giving Fremont notice. Fremont argues that if Boy had given it notice of his proposed move it could have explored alternatives to the purchase of the new residence. In his Decision Upon Hearing, the administrative law judge made a specific finding that Boy was "living in a state of emergency" in his 77th Avenue residence. When reviewing an award of the Industrial Commission, we are compelled to sustain such findings if they are reasonably supported by the evidence. *See Salt River Project v. Industrial Commission*, 128 Ariz. 541, 627 P.2d 692 (1981). We must acknowledge that the administrative law judge's finding of "emergency circumstances" gives that term a very broad definition. Nonetheless, we believe that Boy's situation was sufficiently "special," and his method of resolving it sufficiently reasonable, to require the result that Fremont not escape responsibility for paying for the necessary alterations to Boy's new residence. We say this for several reasons.

Boy was suffering financial difficulties while living in the 77th Avenue residence. During a hearing held in July of 1985, Boy testified as follows:

> The reason why I moved from where I lived in the house at 77th Avenue was one of my roommates was getting married. I had two different roommates. One of them drank real heavy and he was out of work and he was—he was getting just worse constantly all the time; he wasn't paying his bills. I couldn't afford to pay them and I couldn't afford to pay, to rent a house by myself. There was, you know—when

it's split three different ways, it helped. But by myself, I couldn't. And the opportunity to get a house came up, you know, at a reasonable price.

With the financial help from his parents, Boy was able to remedy his economic situation by moving into a reasonably priced home. Because this home was located in the neighborhood where he grew up, Boy was also able to move into an environment where he had friends and neighbors who were willing to help with his special needs as a quadriplegic.

In disputing the finding of emergency circumstances, Fremont relies heavily on a letter from Boy's attending physician indicating that Boy had entertained the thought of purchasing a home prior to his actual move. In a letter written two months prior to Boy's move into the Virginia residence, Dr. John Vivian wrote: "It is my understanding that Bill is hoping to buy a home. This home should have modifications to allow a quadriplegic to live functionally therein. It is also my understanding that his family is going to make the initial down payment on the home." Without more, Dr. Vivian's letter is an insufficient basis for disturbing the finding of emergency circumstances. The letter merely indicates Boy's "hope" that he would be able to purchase a home. It does not indicate either a specific homesite or a time frame for the purchase. Furthermore, the primary reason Fremont posits for the required notice is that it would have permitted it to investigate alternatives to the move. This was a process that would, in all likelihood, have taken more time than Boy could have been expected to wait. Boy might have had time in the literal sense to give notice of the move. Under the particular facts of this case, however, we do not find it unreasonable that he be excused from doing so.

In addition to requiring notice to the employer, A.R.S. § 23–1062(A) also requires that any medical benefits provided by the employer be "reasonably required." There was no serious contention by Fremont in the hearings below that the modifications Boy requested are unreasonable in

the sense of being unnecessary. In *Pickett,* the evidence did not indicate that the installation of a pool in the claimant's backyard was the only means by which she could obtain relief from her symptoms. Consequently, we found that there was a "substantial question" as to the reasonableness of the claimant's expenditures. Here, the evidence did not indicate that the residence Boy chose was particularly difficult or expensive to modify as opposed to any other residence that Fremont might have found for him. After reviewing the evidence, we find reasonable support to sustain the administrative law judge's finding of "emergency circumstances" although these would be better characterized as "special circumstances" sufficient to justify the conclusion that Fremont should pay for the modification. *See Pickett,* 26 Ariz.App. at 214, 547 P.2d at 485.

### THE COST OF THE RESPONDENT'S VAN

◼ Fremont also argues that A.R.S. § 23–1062(A) cannot be interpreted to require it to pay for the cost of Boy's van, as opposed to requiring it to pay for modifications to a vehicle which would enable him to drive it. Section 23–1062(A) reads as follows:

> Promptly, upon notice to the employer, every injured employee shall receive medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches *and other apparatus,* including artificial members, reasonably required at the time of the injury, and during the period of disability. Such benefits shall be termed 'medical, surgical and hospital benefits.' (Emphasis added).

Fremont argues that a van is not properly characterized as an "other apparatus" as that term is used in this statute. It asserts that "other apparatus" means medical apparatus the employee requires to replace bodily function lost as a result of an industrial accident. Fremont reasons that a motor vehicle, unlike a wheelchair, does not replace a lost bodily function by substituting for an employee's lost ability to walk.

We agree with the general proposition that "other apparatus" means an apparatus required to replace a lost bodily function. *See Regnier v. Industrial Commission,* 146 Ariz. 535, 707 P.2d 333 (App.1985). We also agree that in some instances, only the modifications to a vehicle and not the vehicle itself would qualify as such an apparatus. However, we disagree with Fremont's reasoning that in this case the entire vehicle does not fall within that interpretation of the term.

◼ We find unpersuasive Fremont's argument that a van, unlike a wheelchair, is "merely a form of transportation which allows one to travel [a] greater distance in a shorter period of time." As a result of Boy's industrial injury, he has lost, among other things, his ability to perspire, and he is therefore exposed to the danger of his body temperature reaching critical levels. For Boy, a wheelchair is simply inappropriate for travel beyond limited distances. There was no evidence that the vehicle Boy owned at the time of the accident could be satisfactorily modified to replace his lost bodily functions. There was evidence that the modified van was essential to restore virtually any mobility. The administrative law judge was correct in his conclusion that the van is a reasonably required "other apparatus."

◼ We expressly adopt the reasoning of the Florida Supreme Court:

> Where an industrial injury necessitates the modification *or substitution* of an automobile in order to accommodate a wheelchair or artificial member and to restore in part a claimant's former ambulatory ability, such costs may be awarded as 'other apparatus.' *Walt Disney World v. Morgan,* I.R.C. Order 2–3818 (May 22, 1979). (Emphasis added).

*Fidelity and Casualty Co. v. Cooper,* 382 So.2d 1331, 1332 (Fla.App.1980). We are not persuaded by Fremont's assertion that the Florida statute interpreted in *Cooper* is capable of a broader interpretation than our own statute. *See* Fla.Stat.Ann. § 440.-13(1) (West 1981) ("the employer shall furnish to the employee such remedial treatment ... as the nature of the injury or the

process of recovery may require, including medicines, crutches, artificial members, and other apparatus"). We also expressly reject the New York line of cases cited by Fremont holding that a motor vehicle is not a medical "apparatus" under workers' compensation law. *See Kranis v. Trunz, Inc.,* 91 A.D.2d 765, 458 N.Y.S.2d 10 (1982); *De-Croix v. N. Sumergrade & Sons,* 20 A.D.2d 735, 246 N.Y.S.2d 852 (1964).

We affirm the Industrial Commission Award. We do not find that the law supports Boy's request for attorney's fees.

CORCORAN and GREER, JJ., concur.