839 P.2d 1101

Katherine LASITER, Petitioner,

v.

INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Samaritan Health Services, Respondent Employer,

Industrial Indemnity Company, Respondent Carrier.

No. CV–90–0410–PR.

Supreme Court of Arizona, En Banc.

Oct. 15, 1992.

Charles M. Wilmer, P.C. by Charles M. Wilmer, Phoenix, for petitioner.

Industrial Commission of Arizona by Anita R. Valainis, Phoenix, for respondent.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by Donald L. Cross, J. Victor Stoffa, Phoenix, for respondent employer/carrier.

## OPINION

FELDMAN, Chief Justice.

The question presented in this workers' compensation case is whether the notice requirement of A.R.S. § 23–1062(A) precludes an injured employee from receiving medical benefits for the care reasonably required as a result of an industrial injury because the employee did not notify the carrier that she was to receive specific medical care at a given time. We granted review to clarify the law on this issue of statewide importance. *See* Rule 23(c)(4), Ariz.R.Civ.App.P., 17B A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTS AND PROCEDURAL HISTORY

### A. The Initial Injury

Katherine Lasiter injured her back in the course of her employment in 1978. She submitted a claim for workers' compensa-

tion benefits to her employer's carrier, Industrial Indemnity Co. ("Industrial"). After Industrial denied the claim, Lasiter filed a request for a hearing with the Industrial Commission ("Commission"), and Industrial ultimately accepted the claim.

In May 1979, Lasiter was diagnosed with a spinal stenosis at L3–4 and a spondylolysis at L4–5, and was subjected to a decompression laminectomy bilaterally at L4–5 and L5–S1. In November 1979, she had a lumbar fusion, and in October 1980 she underwent debridement of the bone graft area.

On February 24, 1981, physicians at the Southwest Disability Evaluation Center diagnosed Lasiter as "probably essentially stationary," and Industrial terminated benefits. On February 24, 1982, an administrative law judge ("ALJ") found that Lasiter's injury was stationary and that she had suffered a twenty-five percent general disability. The parties stipulated that she had sustained no loss of earning capacity.

### B. The First Reopening

On January 25, 1985, Lasiter filed a petition to reopen her claim, which Industrial denied. On March 12, Lasiter requested a hearing on the reopening. In June, R. Richard Maxwell, M.D., performed laminectomies at L4–5 and L5–S1 and another fusion at L4–5. Following a hearing, the ALJ ordered Lasiter's claim reopened on December 26, 1985, based on a finding that Lasiter had required additional medical treatment for her back as a result of her industrial injury and that her hypertension, but not her ulcer problem, had been aggravated by her back injury.

Lasiter sought review of the ALJ's finding with respect to the ulcer, and Industrial sought review regarding the orthopedic and hypertension problems. The ALJ affirmed the award on March 19, 1986, and Lasiter filed a petition for special action in the court of appeals. By stipulation, the special action was dismissed and the matter remanded to the Commission for further proceedings.

On December 2, 1986, Industrial sent Lasiter a notice terminating her benefits as of

October 31, 1986 with no additional permanent disability. Lasiter requested a hearing, contending that her medical condition was not stationary. Following a hearing, the ALJ found the testimony of Glen Bair, M.D., (Industrial's expert) convincing, and further found that Dr. Maxwell's diagnosis of Lasiter's condition was not specific enough to warrant a finding that further surgery was necessary. Although the ALJ ruled that Lasiter's condition had become medically stationary, he added that "[i]f in the future some more specific diagnosis is made then perhaps further surgery might be indicated, but at the present time it is the undersigned's finding that the applicant's condition became medically stationary on October 31, 1986." On administrative review, the ALJ affirmed this decision.

## C. The Present Dispute

On January 14, 1988, Dr. Maxwell again examined Lasiter and found that her back had become more unstable. He indicated in his report that she demonstrated symptoms of spinal stenosis and an unstable fusion with pseudoarthrosis. He concluded that "[o]ur plan at the current time is to press on with myelogram and CT scan, [before] deciding whether or not exploration of the disc spaces is going to be required[;] or if it is all epidural fibrosis, we may be able to only do the spinal fusion." On January 26, at Dr. Maxwell's request, Jack Mayfield, M.D., examined Lasiter and concluded that "the best solution to her problem would be surgical including a posterior segmental pedicle screw instrumentation with bilateral fusions and, two weeks later, an anterior spinal fusion between L4 and L5." In a January 29, 1988 letter, Dr. Maxwell informed Lasiter's attorney of his recommendation: "there is gross instability at the L4–5 region. She is in need of an interpeduncular fusion to stabilize the spine from the posterior region and also will likely require an anterior lumbar fusion."

On January 28, 1988, Lasiter filed a new petition to reopen. She attached a copy of Dr. Maxwell's January 14 report and indicated that additional reports would be forthcoming as received. The petition noted that "[r]ecent updated diagnostic studies, while hospitalized, reveal the pseudoarthrosis, and I need additional surgery to stabilize my back. There is an orthopedic surgeon, ... Dr. Mayfield, who has also seen and examined me. Additional reports will be forthcoming as soon as received."

On February 2, the Commission sent Industrial a notice of Lasiter's petition to reopen, with a copy of Dr. Maxwell's January 14 report attached. On February 4, Lasiter's attorney sent the Commission a copy of Dr. Maxwell's January 29, 1988 letter recommending surgery. On February 5, without having sought an independent medical examination as allowed by A.R.S. § 23–1026, Industrial denied Lasiter's petition to reopen. Lasiter then requested a Commission hearing.

Without further notice to Industrial, Lasiter underwent back surgery on March 30, 1988 and again on April 18, during which the L3–4, L4–5, and L5–S1 joints were fused. Industrial's liability for this surgery is the subject of the present dispute.

After three hearings on Lasiter's petition to reopen, the ALJ issued an award on April 27, 1989. The award addressed two issues: (1) "whether the applicant had a new, additional or previously undiscovered disability or condition caused by the industrial injury"; and (2) "whether [Industrial] had notice pursuant to A.R.S. [§ 23–1062(A)] that the surgeries in March and April of 1988 were going to be done." Decision Upon Hearing and Findings and Award Granting Petition to Reopen But Denying Carrier Liability for Surgery, April 27, 1989, at 3 ("ALJ Findings").

The ALJ granted Lasiter's petition to reopen, finding that she had shown "there was a new, additional or previously undiscovered disability or condition caused by the industrial injury." Id. at 5. The ALJ therefore concluded that Lasiter was "entitled to have her claim reopened for further benefits." Id. The ALJ also found, however, that Lasiter had not provided adequate notice of the surgery to the carrier as required by A.R.S. § 23–1062(A), and

Industrial therefore was not liable for the cost of her surgery:

The Statute [A.R.S. § 23–1062(A)] and the cases make it clear that before a carrier is charged with a liability for paying for medical care it must receive notice before the care is given that it is going to be given. In this case *there are medical reports which state the opinion of the surgeon that additional care is needed but there is no evidence that the applicant or the applicant's attorney or the applicant's physician notified the employer or the insurance carrier specifically that either of the surgeries in March and April of 1988 were going to be performed.* There is a medical report from Dr. Maxwell to applicant's attorney dated January 28, 1988, saying that the applicant is in need of a fusion. There is a medical report from Jack Mayfield, M.D., saying that the best solution to the applicant's problem would be a fusion. There is also a medical report which appears to be a progress note with copy to applicant's attorney saying "our plan at the current time is to press on with myelogram and CT scan, therefore deciding whether or not exploration of the disc spaces is going to be required or if it is all epidural fibrosis, we may be able to only do the spinal fusion."

The undersigned finds these various comments do not constitute notice to the carrier within the meaning of *A.R.S.* [§ 23–1062(A)]. The undersigned finds further that there is no evidence of an emergency which would justify ignoring the notice requirement. See *Pickett v. Industrial Commission,* 26 Ariz.App. 213, 547 P.2d 484 (1976). See also *Terry Grantham Co. v. Industrial Commission,* 15 [154] Ariz. 180 (App.) 741 P.2d 313 (1987).

*Id.* at 5–6 (emphasis added). The ALJ came to the following conclusion:

In summary, and considering all of the evidence, the undersigned finds that the testimony of Dr. Maxwell is more persuasive than that of Dr. Bair and that therefore the applicant has sustained a new,

additional or previously undiscovered disability and that therefore her claim should be reopened. The undersigned finds further that the applicant failed to give notice pursuant to *A.R.S.* [§ 23–1062(A)] of the surgeries performed in March and April of 1988 and that these surgeries and the resultant costs are not the liability of the defendant insurance carrier.

*Id.* at 6–7. On administrative review, the ALJ affirmed this award on June 21, 1989.

Lasiter filed a petition for special action in the court of appeals, challenging the ruling that she had not provided Industrial with adequate notice of her surgery. She further asserted that even if the notice had not been adequate, Industrial is liable for the surgery because the ALJ found that the surgery was reasonable and necessary. In a memorandum decision, the court of appeals affirmed the Commission's award. *Lasiter v. Industrial Comm'n,* No. 1 CA–IC 89–083 (Aug. 28, 1990).

We granted Lasiter's petition for review and requested supplemental briefing on the following issues: [1]

1. Does the notice provision of A.R.S. § 23–1062(A) require simply notice that an injury has occurred, or notice of a particular course of treatment?

2. If "notice" means notice of a particular course of treatment selected by the claimant, and such notice is not given, what constitutional or statutory authorization exists for excluding the employer's/carrier's obligation to pay accident benefits for treatment that is subsequently found to have been reasonably required to treat the industrial injury?

## DISCUSSION

A. The Notice Requirement of A.R.S. § 23–1062(A)

1. *What "Notice" Does A.R.S. § 23–1062(A) Require?*

■ In 1968, the legislature adopted A.R.S. § 23–1062(A), which provides in part:

---

1. We did not grant review, or ask for supplemental briefing, on the issue of notice under the various subsections of A.R.S. § 23–1061. We do

not address that issue, although it is addressed in the concurrence.

Promptly, *upon notice to the employer*, every injured employee shall receive medical, surgical and hospital benefits or other treatment, nursing, medicine, surgical supplies, crutches and other apparatus, including artificial members, reasonably required at the time of the injury, and during the period of disability.

(emphasis added).

This court has not had prior occasion to address what notice A.R.S. § 23–1062(A) requires.[2] The court of appeals, however, has confronted this issue before. In *Pickett v. Industrial Comm'n*, 26 Ariz.App. 213, 213–14, 547 P.2d 484, 484–85 (1976), the claimant, without informing her employer, had a swimming pool constructed at her house allegedly so she could undergo swim therapy to ameliorate the consequences of an industrial injury for which she had already been awarded one hundred percent disability. The carrier refused to pay her request for reimbursement for the cost of the pool, and the Commission denied benefits. The court of appeals affirmed, holding that "in the absence of special circumstances not present here, the statute requires that notice be given to the employer in order to obligate the employer to pay for the medical, surgical, and hospital expenses incurred by the employee." *Pick-*

*ett*, 26 Ariz.App. at 214, 547 P.2d at 485. While the court agreed with Pickett that the employer had notice of the claimant's need for hydrotherapy, "this is far from saying that the employer had notice of petitioner's *intent to install* a swimming pool ... and it is this latter notice which is a necessary precondition for reimbursement to petitioner for such an extraordinary expense." *Id.* at 215, 547 P.2d at 486.[3]

In reaching its decision in *Pickett*, the court of appeals offered a compelling rationale for the notice requirement.

The requirement of notice to the employer in the average case is perfectly understandable, since it gives the employer an opportunity to participate in the decision-making for which it ultimately must pay; it can investigate the reasonableness of or need for the suggested treatment and suggest alternate procedures before the treatment is a *fait accompli.*

*Id.* at 214, 547 P.2d at 485. We agree with this explanation of the notice requirement and cannot quarrel with the conclusion that notice of a need for hydrotherapy can hardly be equated with notice of a need to construct a swimming pool. In short, un-

**2.** In *Gullick v. Industrial Comm'n*, 94 Ariz. 237, 241, 383 P.2d 123, 126 (1963), to which Lasiter refers in her brief, we held that

> [p]rior authorization for medical treatment reasonably held necessary by competent medical practitioners is not a prerequisite to the accident benefits of the Work[ers'] Compensation Act.... [S]o long as the course of treatment followed is reasonable under all the circumstances the Commission may not require the injured employee to select another treatment at the risk of losing the benefits conferred by the Work[ers'] Compensation Act.

*Gullick* was decided under former A.R.S. § 23–1081, the predecessor to § 23–1062(A), which did not contain the language "upon notice to the employer" and is therefore not helpful in answering the question now before us. *See Pickett v. Industrial Comm'n*, 26 Ariz.App. 213, 214, 547 P.2d 484, 485 (1976).

**3.** The parties cite two other court of appeals opinions dealing with the issue of § 23–1062(A) notice, but neither addressed the content of the notice required by the statute. In *Baudanza v. Industrial Comm'n*, 149 Ariz. 509, 720 P.2d 110 (Ct.App.1986), the court of appeals affirmed that

§ 23–1062(A) requires only notice to the employer and not approval. In *Baudanza*, the court of appeals remanded the case for a determination on the merits of whether surgery was reasonably required. The court found that an employer's prior approval of surgery was not a prerequisite to liability, and the carrier had conceded that it had actual notice that the employee's physician would proceed with surgery even without the carrier's permission. *Id.* at 511, 720 P.2d at 112. Given the carrier's concession, the court did not need to decide whether the employee provided adequate notice under § 23–1062(A).

In *Terry Grantham Co. v. Industrial Comm'n*, 154 Ariz. 180, 182, 741 P.2d 313, 315 (Ct.App. 1987), it was "undisputed that [the claimant] failed to give ... his employer's carrier ... prior notice of his intent to move" into a new home requiring structural modifications to meet his medical needs. Instead, the court determined that the carrier should pay for the modifications because they were reasonably necessary and that "special circumstances" excused the failure to give notice.

der the facts of *Pickett*, an extraordinary case, adequate notice would entail specific notice of the intent to construct a swimming pool.

We believe that in this case, however, both parties take overly extreme positions. To abstract from *Pickett* a requirement of notice of a specific intent to undertake a particular treatment at a particular time, as Industrial urges—or, as the court of appeals held, notice to the "employer (or its carrier) before undergoing recommended surgery on a specified date," *Lasiter*, mem. dec. at 11 [4]—would go beyond the purpose of the notice requirement and would place an unnecessary obstacle between an injured employee and compensation for medical expenses. *See Brotherton v. Workmen's Compensation Appeals Bd.*, 273 Cal.App.2d 451, 78 Cal.Rptr. 70, 73–74 (1969) (where employee informed employer that he required further medical care, appeals board erred in denying employee benefits "because [the employee] did not inform defendants specifically of the anticipated surgery nor seek their permission and did not wait until his claim had been fully litigated and decided. The law does not impose such requirements as conditions precedent to the right to reimbursement.").

On the other hand, to hold, as Lasiter urges, that § 23–1062(A) requires only "bringing to the attention of a carrier a need for medical care" might, if read too generally, deprive employers or their carriers of the information needed to make an informed determination of how best to participate in the decision-making process regarding the nature and extent of the employee's reasonably necessary medical care.

We therefore conclude that the proper scope of the notice required by § 23–1062(A) lies between these two extremes. Notice is sufficient if the employer is informed of the employee's medical diagnosis and of the course of treatment recommended by the employee's physician. We

believe that this formulation adequately protects the employer's legitimate interest in "investigat[ing] the reasonableness of or need for the suggested treatment and suggest[ing] alternate procedures before the treatment is a *fait accompli*," *Pickett*, 26 Ariz.App. at 214, 547 P.2d at 485, without placing an undue or overly technical burden on the injured employee. *See also* 2 Arthur Larson, *Workmen's Compensation Law* § 61.12(d)(1) (1992) ("Larson") ("If the employer has sufficient knowledge of the injury to be aware that medical treatment is necessary, he has the affirmative and continuing duty to supply medical treatment ...; if the employer fails to do so, the claimant may make suitable arrangements at the employer's expense.") (footnotes omitted).[5]

The effect of the ALJ's award is that Lasiter's medical bills are either left unpaid, have been paid by the community, or have been paid by some other carrier plan. In any event, the cost of care has not been charged to the industry that caused Lasiter's injury as an expense of doing business. A claimant is not to be deprived of constitutionally required benefits merely because the information timely provided to his or her employer regarding the course and type of needed treatment fails to specify precisely what step or specific procedure is to be performed on which day.

### 2. Did Lasiter Provide Industrial with Adequate Notice?

We now examine the ALJ's finding in light of our interpretation of the notice required by § 23–1062(A). The ALJ denied Lasiter compensation for her 1988 surgical expenses because "there is no evidence that the applicant or the applicant's attorney or the applicant's physician notified the employer or the insurance carrier specifically that either of the surgeries in March and April of 1988 were going to be per-

---

**4.** Such notice, it was urged at oral argument before this court, would enable the employer or carrier to determine how soon it would be necessary to conduct an independent medical examination to assess the employee's need for the proposed treatment.

**5.** Our decision does not, of course, alter the rule that under certain special circumstances, no notice is required. *See, e.g., Terry Grantham Co. v. Industrial Comm'n*, 154 Ariz. 180, 741 P.2d 313 (Ct.App.1987); *see also* 2 Larson § 61.12(f) ("Emergency as exception to rule").

formed." Apparently, therefore, the ALJ's findings on the issue of notice were made with an erroneous understanding of the notice requirement in mind. Applying the notice requirement set forth above, however, the record reveals considerable evidence suggesting that Lasiter may have provided Industrial with adequate notice.

First, there is the petition to reopen itself, on which Lasiter indicated that "[r]ecent updated diagnostic studies, while hospitalized, reveal the pseudoarthrosis, and I need additional surgery to stabilize my back." Attached to the petition was Dr. Maxwell's January 14, 1988 report, which stated that "[o]ur plan at the current time is to press on with myelogram and CT scan, [before] deciding whether or not exploration of the disc spaces is going to be required[;] or if it is all epidural fibrosis, we may be able to only do the spinal fusion." [6]

Second, Dr. Mayfield concluded in his January 26, 1988 diagnosis that "the best solution to her problem would be surgical including a posterior segmental pedicle screw instrumentation with bilateral fusions and, two weeks later, an anterior spinal fusion between L4 and L5." Dr. Maxwell also wrote a letter to Lasiter's attorney on January 29, 1988 stating that Lasiter was "in need of an interpeduncular fusion to stabilize the spine from the posterior region and also will likely require an anterior lumbar fusion." If Lasiter provided Industrial with these documents, there could be little doubt that she notified Industrial of her condition and of the recommended treatment, thus satisfying the notice requirement of § 23–1062(A).

The parties presented conflicting evidence to the ALJ as to whether and when Industrial received these documents, and the ALJ made no findings on this point. We note, however, that the hearing transcripts suggest that Industrial received a copy of Dr. Maxwell's January 14 report on February 3, 1988. *See* Transcript Apr. 3, 1989, at 12. In addition, Industrial's counsel conceded having received Dr. Maxwell's January 29 letter to Lasiter's attorney sometime in early February 1988. *Id.* at 14, 17. After receiving this testimony, the ALJ stated that he would take under advisement whether "actually reaching the Carrier with [medical diagnoses] would be sufficient to meet" the notice requirement, and whether the notice requirement applies "in a situation like this where the Carrier has denied a Petition to Reopen." *Id.* at 17. Ostensibly, then, the ALJ's conclusions of law made resolving any factual discrepancy unnecessary.

■ Having said this much, we go no further. We are not fact finders. Moreover, we lack the authority in workers' compensation cases to modify a Commission award or to enter a new one; we may only affirm an award or set it aside. *Marriott Corp. v. Industrial Comm'n*, 147 Ariz. 116, 118, 708 P.2d 1307, 1309 (1985); *see* A.R.S. § 23–951(D). We therefore set aside the Commission's award and remand this case for further proceedings consistent with our interpretation of § 23–1062(A).

**B. The Notice Requirement and Reasonably Required Medical Care**

**1. *Does A.R.S. § 23–1062(A) Authorize Forfeiture of Benefits if Notice is Inadequate?***

■ We now address whether Lasiter is precluded from receiving the medical bene-

---

**6.** It is important to assess these statements not in isolation but as part of a continuing course of communication and litigation between Lasiter and Industrial. For instance, Lasiter's petition to reopen was filed on January 28, 1988, less than a week after the ALJ had affirmed his December 16, 1987 award which provided that "[i]f in the future some more specific diagnosis is made then perhaps further surgery might be indicated." The petition, therefore, may have suggested to Industrial that Lasiter had received a sufficiently specific diagnosis to warrant a recommendation of further surgery. *Cf. McCoy v. Industrial Accident Comm'n*, 64 Cal.2d 82, 48 Cal.Rptr. 858, 861, 410 P.2d 362, 365 (1966) (defendants' refusal "to render further treatment justified petitioner in seeking the care of her own doctor, and since it is undisputed that such care was 'reasonably required to cure or relieve from the effects of the injury,' she is entitled to reimbursement. We cannot accept the commission's contention that petitioner was required to inform defendants of [her physician's] diagnosis and afford them an additional opportunity to render treatment before she submitted to the operation.").

fits associated with her surgeries should the ALJ properly find on remand that she failed to provide Industrial with adequate notice under § 23–1062(A).

We begin our analysis by noting that we have consistently held the Workers' Compensation Act to be remedial in nature and that it must be construed liberally to effect its purpose of compensating employees for their industrial injuries. *See, e.g., Marriott Corp.,* 147 Ariz. at 120, 708 P.2d at 1311. In addition, we recognize that in Arizona the right to workers' compensation benefits has been constitutionalized. *See* Ariz. Const. art. 18, § 8. This constitutional mandate informed our discussion in *Marriott Corp.,* in which we concluded that "absent express statutory authority, a misrepresentation as to physical health to a prospective employer should present no bar to recovery of compensation benefits for industrial injury." *Marriott Corp.,* 147 Ariz. at 121, 708 P.2d at 1312. We based our decision on the principle that "[a]ny statutory construction which would exclude an employee from workers' compensation protection will require specific language to that effect." *Id.* at 122, 708 P.2d at 1313.

A.R.S. § 23–1062(A) provides that "[p]romptly, upon notice to the employer, every injured employee shall receive medical, surgical and hospital benefits or other treatment ... reasonably required at the time of the injury, and during the period of disability." The statute contains no specific language or express authority by which an employee forfeits compensation benefits for failing to provide the employer with adequate notice.[7] Given the constitutional considerations alluded to above, we therefore conclude that the failure of an injured employee to provide the employer with notice sufficient under § 23–1062(A) does not preclude the employee from recovering compensation for medical expenses *as long as it is established that those expenses were reasonably required* as the result of

the industrial injury. *See* 2 Larson § 61.-12(e) (discussing "wait-and-see" approach); *see also Industrial Indem. Co. v. Industrial Accident Comm'n,* 188 Cal.App.2d 656, 10 Cal.Rptr. 566 (1961) (where employer successfully resisted employee's petition seeking further medical care, employee could recover medical benefits for treatment recommended and performed by employee's physician based on his diagnosis without notifying employer of or again requesting employer to provide necessary treatment); *cf. Baudanza v. Industrial Comm'n,* 149 Ariz. 509, 513, 720 P.2d 110, 114 (Ct.App.1986) ("Of course, a claimant who proceeds with treatment without the permission of the carrier or without a ruling from the Industrial Commission does so at his own risk. If the treatment is ultimately found not to be reasonably required, it will not be compensable.").

2. *Was Lasiter's Surgery Reasonably Required?*

In ordering Lasiter's claim reopened, the ALJ reasoned as follows:

In the 1987 Award, in Finding No. 5, the undersigned said "If in the future some more specific diagnosis is made then perhaps further surgery might be indicated...." That appears to be exactly what has happened. A specific diagnosis has now been made that there was a failure of the fusion at the L–4, L–5 area done in 1979 and again in 1985 and there was entrapment of the nerves. Therefore the undersigned concludes that there was a new, additional or previously undiscovered disability or condition caused by the industrial injury and the appellant is entitled to have her claim reopened for further benefits.

ALJ Findings at 5. The ALJ added that:

In summary, and considering all of the evidence, the undersigned finds that the testimony of Dr. Maxwell is more persuasive than that of Dr. Bair and that there-

---

7. *Cf.* A.R.S. §§ 23–1026(C), (E) (forfeiture of some benefits authorized by statute when worker refuses to submit to a medical examination or "refuses to submit to medical or surgical treatment reasonably necessary to promote" the worker's recovery); A.R.S. §§ 23–908(D), (E) (forfeiture of compensation authorized by statute when neither worker nor his physician reports accident "forthwith" or worker refuses to be examined by employer's physician, unless circumstances warrant excusing worker's failure to report accident).

fore the applicant has sustained a new, additional or previously undiscovered disability and that therefore · her claim should be reopened. The undersigned finds further that the applicant failed to give notice pursuant to *A.R.S.* [§ 23–1062(A)] of the surgeries performed in March and April of 1988 and that these surgeries and the resultant costs are not the liability of the defendant insurance carrier.

*Id.* at 6–7. These findings appear to embody a conclusion that the procedures performed on Lasiter in March and April 1988 were reasonably required. Of course, if we misunderstand the ALJ's findings or if there is new evidence presented, the question of whether the surgeries were reasonably required is for the ALJ to address on remand.[8]

Finally, Industrial argues that Lasiter's failure to provide adequate notice of the surgery itself interfered with Industrial's ability to assess whether the surgery was reasonably required. Because Lasiter was in a body cast following the surgery, Drs. Bair and John Kelley were unable to conduct a post-surgical examination on behalf of Industrial until October 17, 1988. By that time, Industrial argues, they were unable to determine whether the surgery had been reasonably required.

The possibility that in some cases the medical treatment itself may make it more difficult to determine whether it was reasonably necessary is not sufficient to support a blanket rule precluding recovery of medical expenses in all cases where notice

is adjudicated to have been deficient. Moreover, in this case, Dr. Bair had evaluated Lasiter on January 3, 1989, and, when testifying on April 3, 1989, he made no suggestion that the surgery had affected his ability to conduct that evaluation. In addition, when Lasiter filed her petition to reopen, Industrial did not attempt to schedule a medical examination. Instead, it simply denied her claim. We therefore reject Industrial's contention that any lack of notice now precludes Lasiter from establishing that her surgery was reasonably required as a result of her industrial injury.

## DISPOSITION

The notice provision of A.R.S. § 23–1062(A) requires an injured employee to provide the employer with notice of the employee's medical diagnosis along with the course of medical treatment or surgery recommended and to be followed by the employee's physicians. It does not require specific notice of each step or procedure or the date thereof. Even absent such notice, however, the employer or carrier is liable for the cost of any treatment subsequently determined to have been reasonably required as a result of the industrial injury. Thus, the court of appeals' decision is vacated. The Commission's April 27, 1989 award is set aside, and this matter is remanded to the Commission for further proceedings consistent with this opinion.

CORCORAN, J., JAMES C. CARRUTH, Judge and GORDON, J. (Retired), concur.

8. We note, however, that even Dr. Bair (the physician who evaluated Lasiter on behalf of Industrial) seemed to concede that at least the L4–5 fusion was reasonably required as a result of Lasiter's industrial injury and disputed only whether the need for the L3–4 fusion resulted from her industrial injury. Transcript Apr. 3, 1989, at 3–6. On the other hand, Dr. Bair testified that he personally would not have performed the L3–4 fusion, nor would most physicians have performed both anterior and posterior fusion of L4–5 or inserted pedicle screws. *Id.* at 8–10.

Thus, the facts of this case do not present— and we do not address—the question of whether an injured employee who undergoes treatment based on the recommendation of a qualified, competent physician may be denied medical

benefits if the Commission makes a post hoc determination, predicated on testimony by the employer's physician, that the treatment was not reasonably necessary. *Cf. McCoy v. Industrial Accident Comm'n,* 64 Cal.2d 82, 48 Cal. Rptr. 858, 863, 410 P.2d 362, 367 (1966) ("In some cases ... it might be impossible to establish until after surgery is completed that it was reasonably required, and the employee would then be required to obtain the treatment from his own doctor, apprehensively hoping that his claim for reimbursement could be proved by a successful result.... There is no reason to believe the Legislature intended [Cal. Labor Code] section 4600 to be interpreted in a manner to impose such a burden on an injured employee.").

MOELLER, Vice C.J., and JAMES DUKE CAMERON, J. (Retired) recused themselves and did not participate in the determination of this matter; pursuant to Ariz. Const. art. 6, § 3, Justice (then Judge of the Maricopa County Superior Court) FREDERICK J. MARTONE and JAMES C. CARRUTH, Judges of the Pima County Superior Court were designated to sit in their stead.

MARTONE, Justice, concurring in the judgment.

The court has been distracted by the supplemental issues upon which it requested briefing.[1] I agree with the court that the administrative law judge erred, but look no further than the statute itself to find the correct answer. The court believes that the word "notice," as used in A.R.S. § 23–1062(A), requires definition external to the statute itself. It sets up two extreme positions and then employs a common law methodology to select a rule of sufficiency somewhere between them. *Ante*, at 61.

I do not believe that the notice provision of A.R.S. § 23–1062(A) should be read in isolation. It must be read in conjunction with the immediately preceding section, A.R.S. § 23–1061, which defines "notice" for the universe of situations which requires the payment of compensation. Unless read in tandem with each other, A.R.S. § 23–1062 suggests that the only prerequisite to payment is notice. But we know that under A.R.S. § 23–1061 that is not the case. I am of the view that A.R.S. § 23–1062 merely describes the medical, surgical and hospital benefits payable pursuant to the notice of accident, form of notice, claim, reopening, and payment provisions of A.R.S. § 23–1061.

A.R.S. § 23–1061(H) provides that an employee may reopen his claim by filing a petition accompanied by a statement from a physician setting forth the physical condition of the employee relating to the claim. Under A.R.S. § 23–1061(I), the commission notifies the employer's insurance carrier or the self insuring employer in writing which shall in turn notify the commission and the employee within 21 days of its acceptance or denial of the petition. If reopened, the claim will be processed as a new claim. Under A.R.S. § 23–1061(J), the commission will hold a hearing if it determines that denial is improper. Under A.R.S. § 23–1061(M), if the carrier or self insurer does not deny the claim within 21 days from the date of notice, it will immediately pay compensation including medical, surgical and hospital benefits.

This is precisely what happened in this case. On January 28, 1988, Lasiter filed a petition to reopen. It was accompanied by a statement of the physician. On February 2, 1988, the commission sent Industrial notice of the petition to reopen. On February 5, 1988, Industrial denied the petition. On February 11, Lasiter requested a hearing. After hearing all of the evidence, the administrative law judge concluded that "her claim should be reopened." *Ante*, at 64. Because he thought, however, that the notice referred to in A.R.S. § 23–1062 was notice other than the notice required by A.R.S. § 23–1061, he found the carrier not liable. In this, he erred. No separate form of notice is required. If the claim is reopened, the expenses are paid. If the claim is not reopened, the expenses are not paid. In the case before us, the administrative law judge found that Lasiter's claim should be reopened and that should have ended the inquiry. Her expenses then would be paid.

It cannot be said that the notice under A.R.S. § 23–1061(I) is inadequate since the carrier or self insured employer will have 21 days within which to investigate the

---

1. The court says we did not grant review "on the issue of notice under the various subsections of A.R.S. § 23–1061." *Ante*, at 59, n. 1. On the contrary, the petition for review asked for "[a]n interpretation of A.R.S. [§] 23–1062(A) ... to define it's [sic] application with respect to a [sic] employer/carrier's responsibility to promptly provide benefits upon notice that they are need-ed." Petition for Review at 5. Neither the order granting review nor the order requesting supplemental briefs requires us to ignore the immediately preceding statutory section. Indeed, at oral argument, counsel for the petitioner agreed that notice under § 23–1061 was notice under § 23–1062.

66

claim and be heard on alternative courses of treatment. Any separate notice under A.R.S. § 23–1062 would be redundant. The court agrees in part, for it suggests that the petition to reopen itself was adequate notice of her need for surgery. *Ante*, at 62.

I do not agree with part B of the court's opinion, *ante* at 62–63, for two separate and independent reasons. Because notice was adequate under either A.R.S. § 23–1061 or the court's common law reformulation, we have no occasion to address the question of whether inadequate notice results in forfeiture of benefits. I do not understand how the court reaches an issue which is not before it. Even under the court's common law reformulation, notice was adequate and there is no need to remand on that issue. But even if issues are to be decided on remand in connection with notice, the administrative law judge would only reach the question of forfeiture in the event he finds that notice was inadequate. Since a finding that notice was adequate would moot this issue, we should not reach it.

The second reason we should not reach the issue is that it simply does not arise under the statutory interpretation that notice under A.R.S. § 23–1061 is the notice referred to in A.R.S. § 23–1062. Since compensation would only be paid upon reopening, and reopening is dependent upon the filing of a petition to reopen, the notice of the petition itself would always precede compensation. Thus one could never forfeit benefits under A.R.S. § 23–1062 as long as there has been compliance with A.R.S. § 23–1061.

Finally, I do not understand the court's uncertainty regarding the administrative law judge's findings in this case. The court states that "the question of whether the surgeries were reasonably required is for the ALJ to address on remand." *Ante*, at 64. But the ALJ has already decided that Lasiter's claim should be reopened. And the notice is adequate under both the statute and the court's common law reformulation.

I join the court in vacating the decision of the court of appeals and vacating the award of the administrative law judge. But because I believe that notice was adequate as a matter of law under A.R.S. § 23–1061, and the administrative law judge denied relief only because of a contrary ruling, I would remand with the expectation of the entry of an award in favor of Lasiter.