[Civ. No. 66788. Second Dist., Div. Three. Nov. 8, 1983.]

MARVIN P. EISENBERG et al., Plaintiffs and Appellants. v.
BEVERLEE A. MYERS, as Director, etc., Defendant and Respondent.

**COUNSEL**

Weissburg & Aronson and Kenneth M. Stern for Plaintiffs and Appellants.

John K. Van de Kamp, Attorney General, and Robert P. Lewis, Jr., Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**KLEIN, P. J.**—Plaintiffs and appellants Dr. Marvin Eisenberg (Eisenberg) and San Fernando Valley Psychiatric Medical Clinic (Valley Medical) appeal from a judgment denying their petition for a writ of mandate. (Code Civ. Proc., § 1094.5.) The trial court upheld the Department of Health Services' (Department) decision to discipline Eisenberg and Valley Medical for violating California Administrative Code, title 22, section 51485 (section 51485)[1] by submitting false and misleading statements of material fact in connection with California Medical Assistance Program (Medi-Cal) billings for 26 patients.

There was substantial evidence to support the trial court's finding that Eisenberg and Valley Medical violated section 51485 by submitting false and misleading statements of material fact in connection with their Medi-Cal billings and, therefore, that they should be subjected to discipline for the violations. Accordingly, we affirm.

---

[1] Section 51485 states in relevant part: "No provider shall submit or cause to be submitted any false or misleading statement of material fact when complying with departmental regulations, or in connection with any claim for reimbursement, . . ."

## Facts and Procedural History

On October 30, 1978, the Department filed an accusation alleging that Eisenberg and Valley Medical had submitted false and misleading claims to Medi-Cal for services they had not rendered or for which they were ineligible for payment.

An administrative hearing commenced on March 31, 1980. The factual bases for the initiation of these proceedings against Eisenberg and Valley Medical were not in dispute. They were established by stipulation between the parties.

### 1. *Stipulated facts.*

Eisenberg was a physician and surgeon. Eisenberg and Valley Medical, a clinic owned by Eisenberg, possessed Medi-Cal provider numbers.

During 1974 and 1975, Medi-Cal fiscal intermediaries, i.e., Blue Cross, Blue Shield, were billed for psychiatric services assertedly rendered by Eisenberg to patients at either Penny Lane School for Girls, an institution for girls with emotional handicaps, or Fair Hope Ranch, a group home for adolescent boys. However, in all but two instances, these services were actually rendered by nonphysician employees of Eisenberg such as psychologists, social workers, and child and marriage counselors.

These claims were paid by the fiscal intermediaries which, in turn, were reimbursed by the Medi-Cal program. If either the fiscal intermediaries or Medi-Cal had known that Eisenberg had not *personally* rendered these services, they would not have paid the claims.

In January 1977, Eisenberg submitted six claims to the fiscal intermediaries for purported psychiatric examinations of patients who were being admitted to North Hollywood Community Hospital for psychiatric complaints, supported by a Dr. Bruce Hector's records. Dr. Hector also submitted to fiscal intermediaries at approximately the same time, claims for performing initial comprehensive histories and physical examinations. Both Eisenberg and Dr. Hector received payment for these claims.

One of the patients, Michael C., was not even a patient of Eisenberg's, but was a patient of Dr. Janis who actually performed the psychiatric evaluation in question.

With respect to the other five patients, either Eisenberg or his employee, Dr. Morganstern, performed psychiatric evaluations while Dr. Hector ren-

dered the histories and physical examinations, and in each instance, the claims were supported with Dr. Hector's records.

## 2. *Defense.*

Eisenberg testified that from 1972 through 1975 he was the medical and psychiatric director for both Penny Lane School for Girls and Fair Hope Ranch. At each facility there were approximately 40 to 50 patients. His nonphysician staff treated the patients. Eisenberg spent two to three hours per week at each facility going over the cases with the employees.

Eisenberg retained the services of Ray Bishop (Bishop) as his business manager from 1971 through 1975. During this time, Bishop had full control of Eisenberg's financial affairs with respect to his psychiatric practice.

## 3. *Rulings.*

The Department found that Eisenberg and Valley Medical had submitted false and misleading statements of material facts in connection with multiple Medi-Cal billings for 26 patients, in violation of section 51485 resulting in an overpayment of $6,583.77. Therefore, the Department found that their Medi-Cal privileges were subject to suspension. Eisenberg and Valley Medical's Medi-Cal provider certificates were indefinitely suspended. However, the suspension was stayed and Eisenberg was placed on probation for three years pursuant to certain terms and conditions, including a requirement that he make full restitution of the $6,583.77.

On June 2, 1981, Eisenberg and Valley Medical sought a writ of mandate to set aside the Department's decision, on the primary ground that the Department had committed a prejudicial abuse of discretion.

At the October 30, 1981, hearing on the petition, the trial court having exercised its independent judgment denied the writ with findings of fact and conclusions of law, and judgment was entered on December 3, 1981. This appeal ensued.

### CONTENTIONS

Eisenberg and Valley Medical contend that the Department abused its discretion by finding: (1) that they had improperly billed for psychiatric services rendered by nonphysicians since California Administrative Code, title 22, section 51305 (section 51305)[2] does not preclude the type of billing

---

[2]Section 51305, formerly subdivision (c), currently subdivision (f), provides in pertinent part: "Psychiatry, psychology, . . . services are not covered as physicians' services when performed by persons other than physicians."

used and, (2) that they should be subjected to discipline for supporting examinations performed by one physician, either Eisenberg or his employee, with the records of another.

## Discussion

### 1. *Limitations on appellate court review.*

When a decision of an administrative agency having statewide jurisdiction, such as the Department herein, is reviewed in a mandamus proceeding, the trial court must exercise its independent judgment on the evidence. (*Beach* v. *Contractors State License Board* (1957) 151 Cal.App.2d 117, 120 [311 P.2d 51].)

The function of appellate review under the independent judgment test has been determined to begin and end with the determination of whether the trial court's findings are supported by any substantial evidence. (*Harlow* v. *Carleson* (1976) 16 Cal.3d 731, 739 [129 Cal.Rptr. 298, 548 P.2d 698]; *Moran* v. *Board of Medical Examiners* (1948) 32 Cal.2d 301, 308 [196 P.2d 20].) In reviewing the evidence on appeal, all conflicts must be resolved in favor of the respondent, and when two or more inferences reasonably can be deduced from the facts, the appellate court is without power to substitute its deductions for those of the superior court. (*Pasadena Unified Sch. Dist.* v. *Commission on Professional Competence* (1977) 20 Cal.3d 309, 314 [142 Cal.Rptr. 439, 572 P.2d 53]; *Lacy* v. *California Unemployment Ins. Appeals Bd.* (1971) 17 Cal.App.3d 1128, 1134 [95 Cal.Rptr. 566]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553].) The judgment is presumed to be correct and the burden falls upon Eisenberg and Valley Medical to show reversible error.

The trial court's findings are supported by substantial evidence. The stipulated facts as set forth indicate that Eisenberg and Valley Medical submitted false and misleading statements of material fact in their Medi-Cal billings, and did so without legal authorization therefor.

### 2. *Section 51305 precludes physicians from billing Medi-Cal for psychiatric services rendered by nonphysicians.*

Eisenberg and Valley Medical assert that it was not a violation of section 51305 to bill Medi-Cal for nonphysician psychiatric services rendered to the patients of the school and ranch in question and billed in the name of Eisenberg because: (1) such services were rendered under Eisen-

berg's personal supervision and (2) they were not required to identify the individual who rendered the services in Medi-Cal billings.

The language of section 51305 is clear on its face and requires that "physicians" must perform psychotherapy in order for a physician to bill Medi-Cal for "physician's services" rendered. ■■■ If the language of a provision is clear and unambiguous, there is no need for judicial construction, and courts should not add to or alter its plain meaning. (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148]; *Hobby Industry Assn. of America, Inc.* v. *Younger* (1980) 101 Cal.App.3d 358, 365 [161 Cal.Rptr. 601].)

■■■ Here, undisputably Eisenberg had his nonphysician staff of psychologists, social workers and child and marriage counselors at Penny Lane School for Girls and Fair Hope Ranch rendering psychotherapy services. Yet Eisenberg and Valley Medical billed Medi-Cal for "psychotherapy," as physician's services. These billings therefore contained false and misleading statements of material facts, contrary to the statutory scheme, as the services were not performed by Eisenberg.

a. *Legislative counsel opinion inapposite.*

Eisenberg and Valley Medical's reliance on a legislative counsel's opinion to buttress their argument that physicians can bill Medi-Cal for psychiatric services rendered by nonphysicians is misplaced.

The legislative counsel's opinion to the effect that a psychiatrist may bill Medi-Cal as a "physician's service" those services which are rendered by a psychological assistant, is strictly limited to the class of psychological assistants.

As the opinion points out, a psychological assistant is prohibited from directly billing the public for services rendered. (See Bus. & Prof. Code, § 2913.) Moreover, a psychological assistant only may be employed by a licensed psychologist, by a licensed physician and surgeon who is board certified in psychiatry, by a clinic providing contracted community health services, or by a psychological corporation to perform limited psychological functions under the immediate supervision of a psychologist or psychiatrist.

Thus, the restrictions placed on a psychological assistant by statute are not applicable to psychologists, social workers, and child and marriage counselors, who can and do bill patients directly for their services without any supervision by a physician. (See Bus. & Prof. Code, §§ 9040 et seq.,

17800 et seq.) In fact, a psychologist even may bill Medi-Cal directly for his services. (See Cal. Admin. Code, tit. 22, §§ 51051, 51309.)

b. *Reliance on federal regulations unavailing.*

Nor do we find persuasive Eisenberg and Valley Medical's argument that 42 Code of Federal Regulations, section 440.50 (regulation 440.50),[3] as it is written preempts the applicable California statutory scheme.

We interpret the federal regulation to act as a minimal guideline to the various states involved with Medicaid. Such a guideline would not preclude California from adopting stricter standards of health care delivery and attendant billing practices.

Therefore, regulation 440.50 relied on by Eisenberg and Valley Medical to require Medi-Cal payment of psychiatric services provided under the "personal supervision" of a physician, cannot be utilized to supplant or to circumvent the California statutory scheme.

California requires services to be actually performed by a physician and not rendered under personal supervision.

The federal government impliedly accepted California's higher standards as set forth in its statutory scheme, namely section 51305, because the United States Secretary of Health and Human Services (formerly Health, Education and Welfare) must approve California's plan prior to the appropriation of funds. (See 42 U.S.C. § 1396.) During the period in question, California was receiving those funds.

Even assuming, however, that regulation 440.50 does establish the applicable billing standard, the facts here disclose no personal supervision.

Penny Lane School for Girls and Fair Hope Ranch had 40 to 50 patients in residence at any given time. Yet Eisenberg spent a mere two to three hours per week at each facility reviewing cases with the nonphysician staff. Under these circumstances, Eisenberg's supervision was questionable at best. Such conduct would not qualify as "personal supervision" under the language of regulation 440.50.

---

[3]Regulation 440.50 states in relevant part: " 'Physicians' services,' . . . means services provided—[¶] . . . . [¶] (b) By or under the personal supervision of an individual licensed under State law to practice medicine or osteopathy."

3. *Billings only in the name of the "provider" not adequate.*

█ We are not persuaded by Eisenberg and Valley Medical's effort to avoid compliance with section 51305 advanced by their argument that they were not required to identify the individual who actually rendered the service in the billings to Medi-Cal but were only required to supply the name of the "provider."

A "provider" is a term of art in Medi-Cal jargon which applies to "any individual, partnership, clinic, group, association, corporation, institution, or public agency . . . meeting applicable standards for participation with the Medi-Cal program." (Cal. Admin. Code, tit. 22, § 51051, subd. (a).)

At the time of the acts and omissions in question, California Administrative Code, title 22, section 51502 (section 51502) read in relevant part: "All charges submitted for payment shall be on billing forms approved by the Director. . . . The billing shall include: [¶] (1) A description of each service rendered to the beneficiary. [¶] (2) The name of the provider rendering each service. [¶] . . . [and] [¶] (4) The charge for each service."

The approved forms herein involved were only two in number, one of which does not even mention the word "provider." That form requires information regarding the name of the individual who rendered the service if different from the physician of record. However, the bills submitted on said form uniformly represented, "all services performed by Marvin P. Eisenberg, M.D."

This is a falsification of the true facts, since the evidence is uncontradicted that the psychiatric services were rendered by Eisenberg's nonphysician staff.

False certification of facts is precisely the evil addressed by *Brown* v. *State Department of Health* (1978) 86 Cal.App.3d 548 [150 Cal.Rptr. 344], wherein a doctor also signed a certificate of billing falsely representing that he had personally performed the medical services for which he submitted bills to the Medi-Cal program. As the *Brown* court stated: "Factual certifications by medical doctors are used extensively throughout society for many and varied purposes. A false medical certification, regardless of the doctor's intent, may be put to great mischief. . . . [For example] [h]ad Dr. Brown certified the true facts, a review of his claim would have prevented overpayment since the Medi-Cal authorities could then have determined that payment was not due. By certifying a false statement of fact Dr. Brown hindered the discovery of the overbilling. . . . [¶] . . . The potential of harm from the existence of a false medical certificate, regardless of the

intent of the doctor signing the certificate, requires that doctors refrain from signing false certificates." (*Id.*, at pp. 555-556.)

The other form identifies the signatory as the "provider of service." These forms were signed by Eisenberg. However, as previously stated, the intent and purpose of sections 51485 and 51305 is to specifically identify the physician who actually performed the services set forth on the billing claim form. The reasons for such statutes is obvious—to prevent medical fraud and fraudulent practices at substantial expense to the taxpayer.

While section 51502 obviously requires the name of the provider to be included on the billing, this section cannot be construed to permit Eisenberg to bill for services he did not perform in contravention of the clear directive of section 51305.

It is axiomatic that all provisions of a particular statute must be construed as a whole so that all component parts will have purpose and effect. (*People* v. *Comingore* (1977) 20 Cal.3d 142, 147 [141 Cal.Rptr. 542, 570 P.2d 723]; *Hobby Industry Assn. of America, Inc.* v. *Younger, supra,* 101 Cal.App.3d at pp. 365.)

Eisenberg's defense that Bishop, his business manager, did his Medi-Cal billings is also unavailing. Whether Eisenberg reviewed the billings or even signed them, he was responsible for the acts of his agent as an independent contractor or employee, acting in the course of his business affecting the use of his Medi-Cal provider certificate. A licensee may not insulate himself from regulations by electing to function through employees or independent contractors. (*Camacho* v. *Youde* (1979) 95 Cal.App.3d 161, 164-165 [157 Cal.Rptr. 26]; *Arenstein* v. *California State Bd. of Pharmacy* (1968) 265 Cal.App.2d 179, 192 [71 Cal.Rptr. 357].)

4. *Discipline is proper for the false and misleading billing submitted for physical examinations.*

Turning from their argument that they were in complete compliance with both the spirit and the letter of the law set forth in sections 51485 and 51305, Eisenberg and Valley Medical hereby contend that they should not be disciplined for billing Medi-Cal for physical examinations rendered by Eisenberg or his employee that were supported by reports of examinations and histories actually performed by Dr. Hector.

Eisenberg and Valley Medical do not address the fact that they also submitted a bill for a patient, Michael C., who was not even Eisenberg's pa-

tient. The support for this claim was admittedly the psychiatric evaluation rendered by Dr. Janis.

The discipline was proper because on their face, the bills were false and misleading. The one bill submitted for Michael C. was a flagrant falsification. Eisenberg rendered no services to this patient because Michael C. was a patient of Dr. Janis. Yet Eisenberg submitted a bill to Medi-Cal for services performed for this patient and supported it with the report of Dr. Janis' psychiatric evaluation.

With respect to the other bills submitted for having conducted initial physical examinations, they were false and misleading because they were supported by reports of examinations actually performed by Dr. Hector, for which examinations Dr. Hector also billed Medi-Cal. Moreover, the evidence indicates that in many instances Eisenberg did not personally perform any evaluation of these patients. Rather, a member of his staff, Dr. Morganstern, provided the evaluations under Eisenberg's "general supervision." Nowhere on the bills does it appear that Dr. Morganstern performed these services.

Again, this false and misleading billing led to Eisenberg and Valley Medical being overpaid by Medi-Cal, and in some instances to double billing, or billing at a higher rate of compensation. For this conduct, Eisenberg and Valley Medical were properly disciplined by the Department.

CONCLUSION

For reasons we have specified, Eisenberg and Valley Medical were responsible for assuring that accurate and correct billings were submitted to the Medi-Cal program. For failing to do so, they bear the consequences in the form of the proper discipline imposed.

DISPOSITION

The judgment of the superior court is supported by substantial evidence, and therefore, we affirm the judgment.

Lui, J., and Danielson, J., concurred.