[No. B095270. Second Dist., Div. Six. May 29, 1996.]

KARL BERGENSTAL, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, TARGET STORES
et al., Respondents.

## COUNSEL

Finestone, Schumaker, Cocquyt & Graham and Joseph I. Graham for Petitioner.

Allen, Rhodes & Sobelsohn and James C. Shipley for Respondents.

## OPINION

**STONE (S. J.), P. J.**—Here we annul a decision of the Workers' Compensation Appeals Board (WCAB), denying the lien of a licensed psychologist for services provided by his assistant, and remand for further proceedings. We hold that, under the proper circumstances, a licensed psychologist can be paid for services provided to an injured worker by the psychologist's registered assistant.

## FACTS

On June 25, 1990, applicant Lupe Sanchez was injured while working as a cashier for defendant Target Stores, which was insured by defendant Constitution State Service Company, when she attempted to catch merchandise falling from a cart. She subsequently underwent surgery for carpal tunnel syndrome. She was very anxious about the surgery and about the pain she continued to feel following the surgery.

On June 21, 1991, psychiatrist Donald Patterson reported that applicant had no psychiatric disability and that psychiatric treatment was not required. On July 16, 1991, petitioner, psychologist Karl Bergenstal, tested applicant. His conclusions included the finding that applicant's "depression . . . was elevated into the clinically significant range, some three standard deviations above normal." The tests also suggested "cognitive confusion and perhaps concentration problems and general diminished ego strength and possible disassociative episodes."

On July 31, 1991, Linda Chaparro, Ph.D., identified herself as a registered psychological assistant in a letter written to applicant's attorney on Doctor Bergenstal's letterhead. On August 21, Doctor Bergenstal wrote to applicant's attorney informing him of applicant's need for psychotherapy and of his arrangements to have applicant "seen in treatment" by Doctor Chaparro.

Psychiatrist Ronald Pollack, whose letterhead included Doctor Bergenstal's name, reported on August 23, 1991, that he had examined applicant and reviewed Doctor Bergenstal's testing. He found that applicant was in need of supportive psychotherapy, which would "be beneficial in helping her return to gainful employment."

On August 28, 1991, and February 20, 1992, defendants denied that applicant had an injury to her psyche or that they were liable for psychiatric

treatment.[1] In April of 1993, defendants requested the qualifications of the persons providing treatment. The response states that Doctor Chaparro "holds a Doctorate of Philosophy." In his report on reconsideration, the workers' compensation judge (WCJ) states: "[N]o rebuttal evidence was offered to the assertion by lien claimant that Ms. Chaparro does hold a Ph.D. in psychology . . . ."

In March of 1992, Doctor Bergenstal again conducted psychological tests of applicant. Doctor Pollack then reevaluated applicant and recommended that she continue to see Doctor Chaparro.

From September of 1991 to December of 1992, Doctors Bergenstal and Chaparro submitted reports regarding applicant's progress in therapy. During that period, the treatments were reduced from approximately once a week to approximately once a month.

In his January 20, 1993, letter to defendants, Doctor Bergenstal stated: "I am the primary treating physician in this case. I formulated the treatment plan, worked solely with the patient on a number of occasions to guide the treatment direction, interpreted test results and used all of this information to guide the intervention of [Doctor] Chaparro . . . . Although I am not present in the room during the sessions with [Doctor] Chaparro, I am located on the premises. [Doctor] Chaparro and I then meet on a weekly basis to discuss treatment direction . . . ."

The WCJ's joint findings and award were served on April 5, 1993, and found applicant had sustained industrial injury to her psyche, right shoulder and right wrist, and was entitled to permanent disability indemnity of 13¼ percent. The award provided that applicant was entitled to reimbursement for self-procured medical treatment in an amount to be adjusted by the parties.

On July 12, 1993, the parties executed a compromise and release (C&R). Applicant settled for $5,000. The C&R provided that medical expenses were to be adjusted by defendant, subject to all legal objections, specifically the objection to Doctor Bergenstal's lien, which was $6,710.

At the hearing of the disputed lien, Doctor Bergenstal was not represented by counsel. The parties' stipulations included the following: "1. Treatment through [Doctor] Karl Bergenstal's office was provided by Linda Chaparro, who is not a licensed psychologist but is a Ph.D. and is a registered

[1]The record contains numerous letters from defendants objecting to Doctor Bergenstal's bills for psychological services.

psychological assistant. [¶ 2. Defendants did not approve the care as provided by Linda Chaparro."

The issues to be resolved were defendants' objections to the lien, pursuant to Labor Code sections 3209.3, 3209.7 and 3209.8, as construed in the case of *Anugwom* v. *Zurich-American Ins. Co.* (1992) MON 124830, 20 Cal. Workers' Comp. Rptr. 278, and the reasonableness of the charges for treatment provided by a physician's assistant.

The WCJ denied the lien in its entirety, after finding: "1. All psychological treatment was provided by Ms. Chaparro. [¶ 2. Ms. Chaparro is not a licensed psychologist. [¶ 3. Employer did not consent to the treatment provided by Ms. Chaparro."

The petition for reconsideration stated: "All treatment was recommended, monitored and supervised by [Doctor] Bergenstal." It also pointed out that defendant had repeatedly refused to pay for the treatment provided applicant because it denied injury to the psyche. Additionally, Doctor Bergenstal noted that Business and Professions Code section 2913 authorized psychological assistants to give treatment under the supervision of a licensed psychologist. He provided information that, on October 15, 1992, the Industrial Medical Council unanimously adopted a position "in favor of physician authorized utilization of psychological assistants."

In answer, defendants argued that, even if it was generally acceptable for psychological assistants to treat pursuant to the Business and Professions Code, the Labor Code's exclusion of such persons from the definition of physician precluded compensation to Doctor Bergenstal.

The WCJ recommended denial of reconsideration, reiterating that Ms. Chaparro was not licensed and had provided treatment without defendant's consent. Therefore, she was not authorized to treat an injured worker under the provisions of the Labor Code and should not be paid for the unauthorized treatment. The WCAB adopted the recommendation of the WCJ and denied reconsideration.

DISCUSSION

Labor Code section 4600 reads in relevant part: "Medical, surgical, chiropractic, and hospital treatment, including nursing, medicines, . . . that is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his or her neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

Since applicant was found to have sustained an industrial injury to her psyche, defendants were required to provide any care necessitated by that injury. ■ "It is the duty of an employer . . . to provide an injured employee with that medical, surgical and hospital treatment which is reasonably required to cure or relieve from the effects of the injury [citation] and to take the initiative in furnishing the same." (*Deauville* v. *Hall* (1961) 188 Cal.App.2d 535, 540-541 [10 Cal.Rptr. 511].)

When defendants denied liability, it was reasonable for applicant to seek treatment for the injury to her psyche. "[I]f the employer has had the opportunity to furnish treatment and care but neglects so to do, the employee is entitled to [herself] procure that care and the employer or its compensation insurance carrier is liable for the reasonable expense incurred by [her] in so doing. [Citation.]" (*Industrial Indem. Co.* v. *Ind. Acc. Com.* (1961) 188 Cal.App.2d 656, 659 [10 Cal.Rptr. 566].)

■ Nevertheless, defendants continue to maintain that they are not required to pay for the psychological care, because it was not furnished by a person who comes within Labor Code section 3209.3's definition of physician. That section reads in relevant part: "(a) 'Physician' includes physicians and surgeons holding an M.D. or D.O. degree, psychologists, acupuncturists, optometrists, dentists, podiatrists, and chiropractic practitioners licensed by California state law and within the scope of their practice as defined by California state law. [¶] (b) 'Psychologist' means a licensed psychologist with a doctoral degree in psychology, or a doctoral degree deemed equivalent for licensure by the Board of Psychology . . . , and who either has at least two years of clinical experience in a recognized health setting, or has met the standards of the National Register of the Health Service Providers in Psychology."

Certain medical practitioners, who do not come within Labor Code section 3209.3, are authorized to provide services to an injured worker if the employer consents. (Lab. Code, §§ 3209.7, 3209.8.) The WCJ apparently considered the lack of consent to Doctor Chaparro's treatment significant. However, it would have been futile for applicant to have sought consent to be treated by Doctor Chaparro, rather than a licensed psychologist, because defendant denied there was any injury to applicant's psyche.[2]

---

[2]Labor Code section 3209.8 provides for reimbursement for services of certain licensed counselors and social workers without employer approval "where the employer has refused to authorize any treatment for the condition arising from the injury treated by the . . . counselor or . . . social worker."

Petitioner is correct that, although Doctor Chaparro was not included in the Labor Code's definition of physician, she was authorized to treat pursuant to section 2913 of the Business and Professions Code.[3]

Defendant called the WCJ's attention to the WCAB's decision in *Anugwom* v. *Zurich-American Ins. Co.*, *supra*, MON 124830, 20 Cal. Workers' Comp. Rptr. 278 which denied payment to a psychological assistant.[4] In denying reconsideration in that case, the WCAB noted that the psychological assistant was the primary source of treatment. There was apparently evidence the injured worker saw only the psychological assistant and could not identify the supervising psychologist.

Doctor Bergenstal provided the WCJ with information regarding the response of the Industrial Medical Council (IMC) to the *Anugwom* decision. A November 1992 article regarding a meeting of the IMC reported the following: "The psychiatry/psychology advisory committee . . . recommended to the council that the IMC take a position in favor of . . . psychological assistants with the proviso that they have obtained doctoral status. In addition, . . . the committee stated that these assistants should in no event be allowed to practice independently or conduct medical legal evaluations."[5]

Although not directly on point, the case of *Miles* v. *Workers' Comp. Appeals Bd.* (1977) 67 Cal.App.3d 243 [136 Cal.Rptr. 508] is helpful in

[3]Business and Professions Code section 2913 reads in relevant part: "A person other than a licensed psychologist may be employed by a licensed psychologist . . . to perform limited psychological functions provided that all of the following apply: [¶] (a) The person is termed a 'psychological assistant.' [¶] (b) The person . . . has completed a doctoral degree which qualifies for licensure under Section 2914 . . . . [¶] (c) The person is at all times under the immediate supervision, as defined in regulations adopted by the board, of a licensed psychologist, or board certified psychiatrist, who shall be responsible for insuring that the extent, kind, and quality of the psychological services . . . she performs are consistent with . . . her training and experience and be responsible for . . . her compliance with this chapter and regulations duly adopted hereunder . . . . [¶] (d) The licensed psychologist . . . has registered the psychological assistant with the board. . . ." We note that becoming a registered psychological assistant could be one way of obtaining the two years of clinical experience which satisfies one of the prerequisites to being considered a physician under Labor Code section 3209.3.

[4]Decisions of administrative tribunals are not binding precedents. However, they may be cited for their persuasive value. (See *Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 779-782 [100 Cal.Rptr. 377, 494 P.2d 1]; *Johnson* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 964, 970 [88 Cal.Rptr. 202, 471 P.2d 1002].)

[5]Doctor Bergenstal also provided the October 6, 1992, report of the psychiatry/psychology advisory committee to the IMC which included a more complete discussion of the qualifications of psychological assistants and stated: "Utilization of psychological assistants for the provision of psychotherapy is common practice in private and public mental health clinics, in hospitals and with private practitioners."

interpreting any conflict between Labor Code section 3209.3 and Business and Professions Code section 2913. There the reviewing court noted that "none of these provisions [sections 4600, 3209.3, 3209.5 and 3209.7 of the Labor Code] specifically includes clinical psychotherapy as medical services chargeable to the employer of an injured worker." (67 Cal.App.3d at p. 248.) However, the court charged the employer for the psychotherapy because it "conclude[d] that the services of the clinical psychologist were, in effect, performed under the direction of a physician and as such the services are within the purview of the provisions of the Labor Code." (*Id.*, at p. 250.)[6]

In a recent federal case (*Gomez* v. *Chater* (9th Cir. 1996) 74 F.3d 967), a nurse practitioner's opinion that the patient's depression was in remission was given the weight ordinarily given to "acceptable medical sources." The court acknowledged that nurse practitioners were not included in the statutory definition of acceptable medical sources. The court also noted that the last time the supervising physician personally examined the patient was approximately 20 months before the nurse practitioner gave her opinion.

However, based on evidence the nurse practitioner consulted the supervising physician numerous times and worked closely under his supervision, the *Gomez* court found the nurse practitioner was acting as an agent of the physician. Therefore, her opinion was considered as part of the opinion of the physician, who was an acceptable medical source. Gomez was denied Social Security disability benefits based on that opinion even though there was a conflicting opinion from another "acceptable medical source" that Gomez had sufficient mental impairment to qualify for disability assistance.

Based on the requirements set forth in Business and Professions Code section 2913, we can reasonably assume that the relationship of a registered psychological assistant to her supervising psychologist or psychiatrist requires at least that degree of supervision which was found to be sufficient in the *Gomez* case. Thus, where there is sufficient consultation and supervision to satisfy the intent of the statute, the psychological assistant can be considered an agent of the treating psychologist.

---

[6]"As a general rule, the employer will not be held liable for treatment administered or directed by practitioners who fall outside of the statutory definition of 'physician,' since such care is technically not 'treatment' within the meaning of the compensation law. Thus, treatment provided by unlicensed physicians . . . is noncompensable. . . . It should be noted, however, that services provided at the direction of a physician, such as massage therapy or a weight-reduction program may be compensable even though not considered to be medical treatment under the statute." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (2d ed. 1994) Medical & Hospital Treatment, § 5.02[2][b], pp. 5-7 to 5-8, fns. omitted.)

Such was not the situation in the *Anugwom* case where the evidence before the WCAB indicated that the licensed psychologist had not provided the sort of supervision which is required by Business and Professions section 2913.

Here, Doctor Bergenstal twice personally conducted extensive testing of applicant. The results of that testing and Doctor Bergenstal's interpretation of those results were considered by psychiatrist Pollack in evaluating applicant's condition. Although Doctor Chaparro conducted the therapeutic sessions, Doctor Bergenstal considered himself applicant's primary treating physician. He said he formulated the treatment plan, supervised Doctor Chaparro, and consulted with her weekly.

Although it would appear that Doctors Bergenstal and Chaparro have satisfied the supervision requirements of Business and Professions Code section 2913, no such finding has been made by the WCJ or the WCAB as the triers of fact. Based on their conclusions that treatment by Doctor Chaparro was not compensable under the Labor Code, they did not determine whether Doctors Bergenstal and Chaparro had complied with all of the provisions of section 2913. Therefore, the matter must be remanded for that determination.

Additionally, we note that defendants objected to the amount charged for the therapy sessions and the supervision, arguing the charges did not come within the standard fee schedule and that Doctor Chaparro's qualifications did not justify that amount. Once the trier of fact determines whether compliance with Business and Professions Code section 2913 was adequate, it can determine a reasonable fee for the services provided.

The order denying reconsideration is annulled. The matter is remanded to the WCAB for further proceedings, consistent with this opinion, to determine whether Doctor Bergenstal is entitled to compensation for the psychological treatment provided to applicant and the amount of any compensation.

Gilbert, J., concurred.

**YEGAN, J.**—I respectfully dissent.

The majority, under the guise of statutory construction, hold that an employer must pay for psychotherapy services provided by an unlicensed psychologist. In essence, the majority add "psychological assistant" to the Labor Code section 3209.3 list of those physicians who are entitled to a lien for services provided.

Linda Chaparro worked as a registered psychological assistant in the office of Doctor Karl Bergenstal. She is not licensed to practice psychology

in the State of California. The parties stipulated that Chaparro, in treating Lupe Sanchez, provided *all* the psychiatric treatment. The Workers' Compensation Appeals Board (WCAB) applied Labor Code section 3209.3 and denied the lien claim for Chaparro's services.

The majority hold that Chaparro's services are compensable by lien if Doctor Bergenstal supervised the psychotherapy. Not so. Labor Code section 3209.3 requires that Chaparro be a licensed psychologist with a doctorate in psychology and two years' clinical experience or satisfy certain standards set by the National Register of Health Service Providers.[1]

In *Anugwom* v. *Zurich-American Ins. Co.* (1992) MON 124830, 20 Cal. Workers' Comp. Rptr. 278, the WCAB denied a similar lien claim for treatment by an unlicensed, registered psychological assistant. The WCAB concluded that Business and Professions Code section 2913 did not authorize payment for services rendered. The same principle controls here. The WCAB denied the lien claim because the employer did not agree to pay for Chaparro's services. (Lab. Code, §§ 3209.7, 3209.8.)

The majority hold that Business and Professions Code section 2913 overrides Labor Code sections 3209.3, 3209.7, and 3209.8. Not so. Business and Professions Code section 2913, subdivisions (a) and (c) states that a registered psychological assistant may perform "limited psychological functions" if the assistant works under the direct supervision of a licensed psychologist. The licensed psychologist may supervise up to three psychological assistants at any given time. (Bus. & Prof. Code, § 2913, subd. (d).) While section 2913 authorizes treatment, it does not provide a lien remedy for payment. Under the majority's analysis, Doctor Bergenstal can employ three psychological assistants and use Business and Professions Code section 2913 as a billing mechanism to quadruple his practice and enjoy the lien remedy for payment.

The Legislature clearly had something else in mind when it created the Board of Psychology to regulate psychological assistants. (Bus. & Prof. Code, §§ 2913, 2920.) The Board of Psychology regulations provide that Doctor Bergenstal must "inform each client or patient in writing *prior to the rendering of services by the psychological assistant* that the assistant is

---

[1] A May 11, 1994, letter from the Board of Psychology indicates that Chaparro has a doctorate degree in philosophy. The letter states: "Ms. Chapparro may not hold herself out to be a psychologist in California unless she has been licensed by the Board of Psychology. . . . Ms. Chapparro has not been issued a license to practice psychology by this Board. A Ph.D. in Philosophy is not a license to practice psychology, but a degree awarded by an academic institution."

unlicensed and is under the direction and supervision of the supervisor as an employee." (Cal. Code Regs., tit. 16, § 1391.6 subd. (b), italics added.) The doctor may not "charge a fee or otherwise require monetary payment in consideration for the employment or supervision of a psychological assistant." (Cal. Code Regs., tit. 16, § 1391.8, subd. (a).)

Nothing in the record indicates that Doctor Bergenstal gave advance written notice that Chaparro would be providing the psychiatric treatment. Doctor Bergenstal submitted a lien claim for Chaparro's services after the fact.

Until today, the law was straightforward and settled. The lien remedy for medical services may only be utilized by licensed physicians as delineated in Labor Code, section 3209.3. (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (2d ed. 1996) Medical & Hospital Treatment, § 5.02[2][b], pp. 5-7 to 5-8; see also *Eisenberg* v. *Myers* (1983) 148 Cal.App.3d 814, 821 [196 Cal.Rptr. 270].) The Board of Psychology rules provide that Doctor Bergenstal may not seek payment for the supervision of Chaparro. (Cal. Code Regs., tit. 16, § 1391.8, subd. (a).) The majority have redrafted Labor Code section 3209.3 and turned Business and Professions Code section 2913 on its head. I would affirm the decision of the WCAB.

Respondents' petition for review by the Supreme Court was denied September 4, 1996. Kennard, J., and Baxter, J., were of the opinion that the petition should be granted.