[No. F032156. Fifth Dist. Apr. 27, 2000.]

PM & R ASSOCIATES Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and ZENITH
INSURANCE COMPANY, Respondents.

## COUNSEL

Wilkins, Drolshagen & Czeshinski, James H. Wilkins and Sean T. O'Rourke for Petitioner.

Catherine I. Hanson and Astrid G. Meghrigian for California Medical Association as Amicus Curiae on behalf of Petitioner.

Herbert W. McGuire for California Society of Physical Medicine & Rehabilitation as Amicus Curiae on behalf of Petitioner.

Mullen & Filippi, Kristin D. Siemens and Richard L. Morris for Respondent Zenith Insurance Company.

Neil P. Sullivan for Respondent Workers' Compensation Appeals Board.

Robert G. Holderness for The California Chapter of American Physical Therapy Association as Amicus Curiae on behalf of Respondents.

## OPINION

**VARTABEDIAN, J.**—In this petition for a writ of review, we are called upon to determine whether a licensed physician in California may use medical assistants to render adjunct services involving concepts of physical therapy to a patient; the Workers' Compensation Appeals Board (WCAB) found such treatment illegal per se because such services may only be rendered personally by the physician, a licensed physical therapist, or by a physical therapy aide acting under the continuing and immediate supervision of a licensed physical therapist. We disagree with the WCAB ruling.

PROCEDURAL BACKGROUND

Petitioner PM & R Associates (PM & R), a medical office that performs medical services for numerous workers' compensation applicants, sought payment from the workers' compensation carrier, respondent Zenith Insurance Company (Zenith). Zenith refused to pay, claiming that certain medical services performed by PM & R and billed as physical therapy services were not reimbursable.

PM & R sought payment through the liens claim process of the WCAB. Although this matter involved a consolidation of numerous cases and claims, it was agreed that the workers' compensation judge (WCJ) would not proceed on a case-by-case basis but would first determine three stipulated issues. These issues were as follows:

"1. The manner in which physical therapy and/or treatment is rendered by PM&R is illegal per se and is not the type of service which is reimbursable through the California Workers' Compensation system.

"2. Even if the physical therapy and/or treatment is found to be reimbursable under the California Workers' Compensation system, Zenith contends that the physical therapy and/or treatment is illegal as applied to these cases and under these set[s] of facts and circumstances and is therefore not the type of service which is reimbursable through the California Workers' Compensation system. This is primarily because the persons performing the services are untrained, not properly supervised, and the care rendered is outside the recognized standard of care for the State of California, and more generally and specifically, the Valley area that we reside in.

"3. The lien claimants in this matter are indicating that the Workers' Compensation Appeals Board does not have jurisdiction over this issue, specifically per Business and Professions Code Section 2220.5 that the Medical Board of California has exclusive jurisdiction to determine the issues as to whether or not a physician is providing services or practicing within the scope of his or her license, including the use of physical therapy aids."

The WCJ found that he had jurisdiction to determine the matter and went on to find that PM & R's practice of using unlicensed medical assistants to perform certain physical therapy tasks is illegal per se and, if not illegal per se, is illegal because the assistants were not trained and were not properly supervised, and the care provided was outside the recognized standard of care. PM & R's petition for reconsideration was denied.

PM & R filed a petition for writ of review, claiming the decision of the WCAB is incorrect. We issued a writ of review. After reviewing the merits, we annul the order of the WCAB denying reconsideration and remand the case for further consideration of the issues in accordance with this opinion.

## FACTUAL BACKGROUND

Dr. Dinesh Sharma and Dr. Michael Wlasichuk are licensed to practice medicine in the State of California. In addition, Dr. Sharma is board certified in physical medicine and rehabilitation. Dr. Sharma and Dr. Wlasichuk set up an office in Visalia, California known as PM & R (Physical Medicine and Rehabilitation) Associates. Their facility includes seven or eight treatment rooms. Dr. Sharma and Dr. Wlasichuk hire and train unlicensed medical assistants to perform physical modalities on patients, consisting of the application of cold and hot packs, massage, electrical stimulation, and ultrasound. Several patients receive therapy at the same time. Although the physicians are not for the most part in the individual treatment rooms during the treatments, they are present in the office. There are times when a patient visits the facility for treatment but is not seen by a physician. The physicians do not employ a physical therapist. The assistants receive written instructions detailing the modalities to provide to the patient. If a problem arises during treatment, the assistant summons one of the physicians. After performing the modalities, the assistants note in writing the modality they have performed; the name of the assistant who provided the modality is not listed on the charts or the billing slips.

## DISCUSSION

## I.

### *Jurisdiction*

The WCJ found that he had jurisdiction to determine the issues before him and proceeded to find that the manner in which treatment is rendered by PM & R is illegal per se and is not the type of service for which reimbursement through the California workers' compensation system is proper.

PM & R alleges that the WCAB does not have jurisdiction to determine whether a licensed physician may use medical assistants in the manner they were utilized here. PM & R claims that the Medical Board of California has exclusive disciplinary and regulatory authority over licensed physicians and the question whether a physician's use of unlicensed medical assistants is

illegal is an issue which should be addressed exclusively by the Medical Board. By allowing the WCAB to determine this issue, PM & R contends there is a substantial risk of obtaining conflicting opinions. PM & R asserts it would be inherently unfair to find PM & R's fees invalid when the regulatory authority which has exclusive jurisdiction over physicians has not reached the same conclusion.

Business and Professions Code section 2220 sets forth the duties and powers for the Division of Medical Quality:

"Except as otherwise provided by law, the Division of Medical Quality may take action against all persons guilty of violating this chapter. The division shall enforce and administer this article as to physician and surgeon certificate holders, and the division shall have all the powers granted in this chapter for these purposes including, but not limited to:

"(a) Investigating complaints from the public, from other licensees, from health care facilities, or from a division of the board that a physician and surgeon may be guilty of unprofessional conduct. The board shall investigate the circumstances underlying any report received pursuant to Section 805 within 30 days to determine if an interim suspension order or temporary restraining order should be issued. The board shall otherwise provide timely disposition of the reports received pursuant to Section 805.

"(b) Investigating the circumstances of practice of any physician and surgeon where there have been any judgments, settlements, or arbitration awards requiring the physician and surgeon or his or her professional liability insurer to pay an amount in damages in excess of a cumulative total of thirty thousand dollars ($30,000) with respect to any claim that injury or damage was proximately caused by the physician's and surgeon's error, negligence, or omission.

"(c) Investigating the nature and causes of injuries from cases which shall be reported of a high number of judgments, settlements, or arbitration awards against a physician and surgeon."

The Medical Board's authority to investigate and commence disciplinary actions is contained in Business and Professions Code section 2220.5:

"(a) The Medical Board of California is the only licensing board that is authorized to investigate or commence disciplinary actions relating to physicians and surgeons who have been issued a certificate pursuant to Section 2050.

"(b) For purposes of this section, 'investigate or commence disciplinary actions' shall mean written, oral, or telephonic communication with a physician or surgeon concerning his or her violation of the Medical Practice Act.

"(c) Written complaints that are subject to Section 43.96 of the Civil Code, relating to the professional conduct or professional competence of physicians and surgeons, shall be processed in accordance with that section."

The authority of the WCAB is contained in the Labor Code. "The Division of Workers' Compensation, including the administrative director and the appeals board, shall have power and jurisdiction to do all things necessary or convenient in the exercise of any power or jurisdiction conferred upon it under this code." (Lab. Code, § 133.) In the workers' compensation arena, all proceedings "[f]or the recovery of compensation, or concerning any right or liability arising out of or incidental thereto" shall be instituted before the WCAB. (Lab. Code, § 5300, subd. (a).) "The Appeals Board is vested with full power, authority and jurisdiction to try and determine finally all the matters specified in Section 5300 subject only to the review by the courts as specified. . . ." (Lab. Code, § 5301.) "The appeals board has jurisdiction over any controversy relating to or arising out of Sections 4600 to 4605 inclusive" absent a contrary agreement. (Lab. Code, § 5304.) Labor Code sections 4600 through 4605 involve the duties of an employer providing medical care to an injured employee. Employers shall provide medical treatment that is "reasonably required" to treat an injured employee and are liable for the "reasonable expense" incurred by or on behalf of an employee. (Lab. Code, § 4600.)

"[O]ne of the fundamental principles of the Workers' Compensation Act is that it is the *employer's* responsibility to provide all medical treatment reasonably required to effect the proper care and speedy recovery of injured employees." (*Bell v. Samaritan Medical Clinic, Inc.* (1976) 60 Cal.App.3d 486, 489 [131 Cal.Rptr. 582].) The legislative scheme "vests exclusive jurisdiction in the Board over any controversy relating to or arising out of the medical treatment of an injured employee." (*Ibid.*) A physician may petition the WCAB for relief if he/she is dissatisfied with the amount paid by the employer or its carrier. (*Id.* at p. 490; Lab. Code, § 5304.) It is a matter of paramount concern that an injured employee be protected from unreasonable charges. (*Bell, supra,* at p. 491.)

PM & R does not dispute that it has treated industrially injured patients, that it has submitted reports, and that it has accepted payments for such treatments. Zenith contends that the expenses submitted by PM & R for treatments provided by unlicensed medical assistants are not reasonable expenses.

We are convinced the WCAB possesses jurisdiction over the subject and parties in issue here. The WCAB is neither investigating nor commencing

disciplinary action, an area exclusively within the jurisdiction of the Medical Board. The WCAB is determining a controversy regarding the payment for medical treatment of an injured employee. Evaluating the reasonableness of a charge includes a determination that the services provided are statutorily authorized. To accept PM & R's position regarding jurisdiction would mean that no one except the Medical Board is authorized to question the practices of a physician. This is clearly not the law as evidenced by the numerous lawsuits alleging physician malpractice pursued without intervention by the Medical Board.[1] The WCAB has jurisdiction to determine the reasonableness of claims; this necessarily includes determining if the liens are for properly provided services.

## II.

### *Use of Medical Assistants to Provide Adjunct Services to Physicians*

 Zenith's position below was that a physical therapist and not a physician may utilize the services of an aide and that supervision of an aide by a licensed physician cannot substitute for that of a physical therapist. Thus, Zenith contended, PM & R could not employ individuals to perform services related to physical therapy because that constituted the use of a physical therapy aide without also employing a licensed physical therapist.

The WCAB agreed and found that the manner in which PM & R provides therapy is illegal per se and is not reimbursable through the California workers' compensation system. In particular, the WCAB found that employing unlicensed physical therapy aides without the presence of a licensed physical therapist is illegal per se and physicians cannot legally supervise physical therapy aides under existing California law. We determine the WCJ erroneously found that a physician must abide by the regulations governing physical therapy aides and may not employ individuals to assist them in services involving concepts of physical therapy without also employing a physical therapist.

A review of the Business and Professions Code provides guidance. The WCJ relied heavily upon the testimony of Steven Hartsell, the current executive officer for the State of California Physical Therapy Examining Committee, in reaching his decision that it is illegal for a physician to supervise physical therapy aides. However, this matter depends on the construction of statutes and as such is a question of law. A pure question of law is independently reviewed on appeal. (*Ramirez v. Yosemite*

---

[1]See Business and Professions Code section 2220, previously set forth, which grants the Medical Board the power to investigate after a judgment has been entered against a physician.

*Water Co.* (1999) 20 Cal.4th 785, 794 [85 Cal.Rptr.2d 844, 978 P.2d 2]; *Garamendi v. Executive Life Ins. Co.* (1993) 17 Cal.App.4th 504, 512-513 [21 Cal.Rptr.2d 578].)

The parameters for the practice of medicine in California are broad and are set forth in Business and Professions Code section 2051: "The physician's and surgeon's certificate authorizes the holder to use drugs or devices in or upon human beings and to sever or penetrate the tissues of human beings and to use any and all other methods in the treatment of diseases, injuries, deformities, and other physical and mental conditions." Physicians are authorized to hire unlicensed medical assistants. (Bus. & Prof. Code, § 2069.)

In addition to Business and Professions Code section 2069 authorizing and defining the basic parameters for medical assistants, medical assistants may perform routine medical tasks and procedures (technical support services) that may safely be performed by a medical assistant. The Division of Licensing has adopted regulations establishing standards for technical support services that may be provided by medical assistants. (Cal. Code Regs., tit. 16, § 1366; Bus. & Prof. Code, § 2071.)

The practice of physical therapy is defined in Business and Professions Code section 2620:

"Physical therapy means the art and science of physical or corrective rehabilitation or of physical or corrective treatment of any bodily or mental condition of any person by the use of the physical, chemical, and other properties of heat, light, water, electricity, sound, massage, and active, passive, and resistive exercise, and shall include physical therapy evaluation, treatment planning, instruction and consultative services. The use of roentgen rays and radioactive materials, for diagnostic and therapeutic purposes, and the use of electricity for surgical purposes, including cauterization, are not authorized under the term 'physical therapy' as used in this chapter, and a license issued pursuant to this chapter does not authorize the diagnosis of disease."

"It is unlawful for any person or persons to practice, or offer to practice, physical therapy in this state for compensation received or expected, or to hold himself or herself out as a physical therapist, unless at the time of so doing the person holds a valid, unexpired, and unrevoked license issued under this chapter." (Bus. & Prof. Code, § 2630.) A physical therapist must be licensed (Bus. & Prof. Code, § 2630) and must have completed a minimum of four years of postsecondary education in an accredited institution (Bus. & Prof. Code, § 2650). A licensed physical therapist "may utilize the

services of one aide engaged in patient-related tasks to assist the physical therapist in his or her practice of physical therapy." (Bus. & Prof. Code, § 2630.) "Patient-related tasks" mean physical therapy services rendered directly to the patient that can be safely and effectively performed by an aide. The requirements for the use of physical therapy aides are contained in California Code of Regulations, title 16, section 1399.

Zenith claims that the WCAB correctly found PM & R's practices to be illegal because a physician may not use unlicensed physical therapy aides to perform patient-related tasks without being properly supervised by a licensed physical therapist. Zenith argues that only a licensed physical therapist may use a physical therapy aide, and then only one aide may be supervised at any given time.

It appears unreasonable to interpret the above regulations to mean that a physician, who has significantly more training than a physical therapist, and who is authorized to perform physical therapy, cannot utilize an employee in his or her medical practice to perform physical-therapy-related tasks, yet a physical therapist can. A comparison of statutes authorizing the use of medical assistants and physical therapy aides shows no prohibition of physician-employed medical assistants for the present purposes.

| Physician | Physical Therapist |
|---|---|
| 1. A physician is authorized to practice physical therapy as part of his medical practice.[2] | A licensed physical therapist is authorized to practice physical therapy (Bus. & Prof. Code, § 2630). |
| 2. A physician may hire unlicensed medical assistants. A physician is not limited in the number of medical assistants that can be employed at one time (Bus. & Prof. Code, § 2069). | A physical therapist may hire an unlicensed physical therapy aide. A physical therapist may supervise only one physical therapy aide at a time (Bus. & Prof. Code, § 2630). |
| 3. A medical assistant performs basic administrative, clerical, and technical supportive services for a physician (Bus. & Prof. Code, § 2069, subd. (b)(1)). | A physical therapy aide performs patient-related and non-patient-related tasks for a physical therapist (Bus. & Prof. Code, § 2630). |

[2]"Physician" as used in this particular discussion includes a licensed physician, surgeon or podiatrist.

4. Technical support services performed by a medical assistant include simple, routine medical tasks and procedures performed on a patient that may safely be performed by a medical assistant (Bus. & Prof. Code, § 2069, subd. (b)(4)).

5. Procedures to be performed on a patient by a medical assistant must be specifically authorized by a written order of the physician (Bus. & Prof. Code, 2069, subd. (b)(2)).

Patient-related tasks mean a physical therapy service rendered directly to the patient that can be safely and effectively performed by a physical therapy aide (Bus. & Prof. Code, § 2630; Cal. Code Regs., tit. 16, § 1399, subds. (a)(1) & (b)(3)).

Patient-related tasks performed by a physical therapy aide must follow an examination of the patient by the physical therapist and a determination by the physical therapist of the tasks which may be assigned to the aide (Cal. Code Regs., tit. 16, § 1399, subd. (b)(1) & (2)).

6. Supervision of a medical assistant requires the physician be physically present in the treatment facility during the performance of the procedures (Bus. & Prof. Code, § 2069, subd. (b)(3).

A physical therapist shall provide continuous and immediate supervision of the physical therapy aide and shall be in the same facility and in proximity to the location where the physical therapy aide is performing the patient-related task. The physical therapist shall at all times be readily available to provide advice or instruction to the aide (Bus. & Prof. Code, § 2630; Cal. Code Regs., tit. 16, § 1399, subd. (b)(4)).

7. There is no requirement that a patient be seen by a physician each visit during which a medical assistant performs authorized procedures.

When a physical therapy aide provides patient-related tasks, the physical therapist shall at some point during the day "provide direct service to the patient as treatment for the patient's condition, or to further evaluate and monitor the patient's progress" (Bus. & Prof. Code, § 2630; Cal. Code Regs., tit. 16, § 1399, subd. (b)(4)).

8. A medical assistant is not authorized to *practice* physical therapy (Cal. Code Regs., tit. 16, § 1366, subd. (d)).

A physical therapy aide is not authorized "to independently perform physical therapy or any physical therapy procedure" (Bus. & Prof. Code, § 2630).

As the above comparison demonstrates, the basic frameworks governing medical assistants and physical therapy aides bear similarity. Although the statutes and regulations do not specifically list physical-therapy-type services as functions that can be performed by a medical assistant, to do so would be impractical in light of the wide range of services which the physician may assign to a medical assistant. The differences between the categories of medical assistant and physical therapy aide are logically based on the nature of the two practices: a physician is licensed to provide a wide range of services based on the physician's advanced training and education, while a physical therapist practices in only one limited area of the medical field based on a more limited education. There is nothing in the statutes and regulations governing these two categories of employees which would indicate that the statutes authorizing the employment of a physical therapist aide by a physical therapist somehow preempt the field of services a medical assistant may provide under a physician's employment.

Zenith and its supporting amicus curiae, the California Chapter of American Physical Therapy Association, place strong reliance on the fact that the regulations prohibit medical assistants from practicing physical therapy.

Although the regulations state that a medical assistant may not practice physical therapy, the term "practice" is a term of art. For example, one must be a licensed physician to practice medicine; one must be a licensed lawyer to practice law; one must be a licensed veterinarian to practice veterinary medicine; and one must be a licensed physical therapist to practice physical therapy. Thus, just as the medical assistant regulations prohibit those assistants from practicing physical therapy, the physical therapy aide regulations prohibit those aides from practicing physical therapy: such aides may not "independently perform" physical therapy or any physical therapy procedure. But "practicing" a particular profession—independently exercising discretion and specialized training to prescribe and implement a course of action—is significantly different from providing adjunctive services to a practice, and they are substantially different in scope, with the latter being far less encompassing than the former. Each of the above listed professionals utilize unlicensed people to assist them in their practices; that does not transform their assistants into people who are "practicing" a particular

profession. Thus, prohibiting a medical assistant from practicing physical therapy does not prohibit a medical assistant from providing adjunctive services involving concepts of physical therapy.

Zenith relies on *Magit v. Board of Medical Examiners* (1961) 57 Cal.2d 74 [17 Cal.Rptr. 488, 366 P.2d 816] as support for its argument that Dr. Sharma and Dr. Wlasichuk are guilty of unprofessional conduct in employing unlicensed physical therapy aides to perform patient-related tasks without being supervised by a physical therapist.

Dr. Magit employed three skilled and trained physicians of medicine who did not have licenses to practice medicine in California to administer anesthetics (including general, spinal and epidural anesthetics) and to treat sick persons. The Board of Medical Examiners found Dr. Magit guilty of unprofessional conduct because he aided and abetted others in the unauthorized practice of medicine. The board determined that Dr. Magit's license should be revoked. The superior court found Dr. Magit not guilty of unprofessional conduct. The board appealed. (*Magit v. Board of Medical Examiners, supra*, 57 Cal.2d at pp. 79-80.)

The giving of anesthetics is an integral part of surgical treatment. It involves the use of drugs and the penetration of tissues, constituting the practice of medicine. The Supreme Court found that the right to give anesthetics is restricted, and in the absence of a statutory basis for an exception, an unlicensed person who performs acts surgical or medical in character has engaged in the unauthorized practice of medicine. Because Dr. Magit aided the three in their unauthorized practice of medicine, he was guilty of unprofessional conduct. (*Magit v. Board of Medical Examiners, supra*, 57 Cal.2d at pp. 83-84.)

Physicians and physical therapists are allowed to employ individuals to assist in their individual practices and provide adjunctive services. The statutes authorize the employment of such individuals, and therefore it is not unprofessional conduct for PM & R to employ a medical assistant to assist in the medical practice, which includes concepts of physical therapy.

Physicians are not precluded from hiring a medical assistant to perform adjunctive services related to their practice of medicine. A medical physician may lawfully employ and supervise medical assistants providing technical supportive services, including those involving concepts of physical therapy, as long as those medical assistants meet the requirements governing their employment.

The WCJ and the WCAB erred when they found that PM & R illegally employed medical assistants to provide services which can only be provided

directly by the medical practitioner, a physical therapist, or a physical therapy aide supervised by a physical therapist.

## III.

### *The Propriety of Services Provided by PM & R*

Having found that a medical physician may employ medical assistants to provide technical support services, including tasks that involve concepts of physical therapy, we must next determine whether substantial evidence supports the WCJ and WCAB finding that PM & R's charges are unreasonable because its employees were not trained, not properly supervised, and the care rendered was outside the recognized standard of care. Zenith argued below and on appeal that the applicable employment standards are those found in statutes and regulations governing physical therapy aides.

In reaching his decision, the WCJ adopted this same approach in analyzing the evidence and applied the more stringent statutes that apply to physical therapy aides and not the statutes that apply to medical assistants. Because an improper standard was used to evaluate this evidence, we are unable to conduct an appropriate review for substantial evidence. The case must thus be remanded to the WCAB to factually determine whether the training, supervision, and care provided here complied with the standards applicable to medical assistants. The WCJ must determine (1) if the tasks performed by the medical assistants were simple, routine medical tasks that may safely be performed by a medical assistant who has limited training, (2) if the medical assistant was properly trained and proficient in the service performed, and (3) if the medical assistant was properly supervised. These issues necessarily involve questions of whether the services provided were within the recognized standard of care. PM & R has the burden to prove its liens were for properly provided services. (*Hand Rehabilitation Center v. Workers' Comp. Appeals Bd.* (1995) 34 Cal.App.4th 1204, 1213 [40 Cal.Rptr.2d 734]; Lab. Code, § 3202.5.) Such proof includes whether PM & R complied with the provisions of Business and Professions Code section 2069 and the attendant regulations governing medical assistants. (See *Bergenstal v. Workers' Comp. Appeals Bd.* (1996) 45 Cal.App.4th 1272, 1280 [53 Cal.Rptr.2d 266].)

To the extent that the WCAB determines that additional evidence may be necessary to make its findings, it should allow the parties to present such evidence. To the extent the WCAB cannot determine any of the issues without a case-by-case analysis, it should proceed with a case-by-case analysis.

We note that the decision made by the WCAB must "state the evidence relied upon and specify in detail the reasons for the decisions." (Lab. Code, § 5908.5.)

## DISPOSITION

The order denying reconsideration is annulled. The WCAB is ordered to grant petitioner's petition for reconsideration and conduct further proceedings in accordance with this opinion.

Ardaiz, P. J., and Dibiaso, J., concurred.